Hammond v. Chamberlin.

## LUTHER HAMMOND v. CLARK CHAMBERLIN.

### Guarantor. Evidence. Subrogation.

Where the defendant sold and transferred to the plaintiff a promissory note made in the usual form, and placed upon the back of the note the following guaranty, "I hereby guarantee this note good until January 1, 1850—Held—that the contract of the defendant was collateral, and not absolute, and that by this guaranty he agreed, that during the period mentioned in the guaranty, the makers of the note should be in that condition, that payment of the note could be enforced against them, if legal diligence was used for that purpose.

And on such a guaranty the defendant is not liable as indorsor, nor is he liable on an absolute engagement to pay the note on the first day of January, 1850, if the makers fail to pay it; and the written guaranty is not admissible as evidence under a count against the defendant as indorsor, nor under one on absolute engagement to pay the note on the first day of January, 1850.

The evidence showed, that the makers of the note before and on the first day of January, 1850, were not only the owners, but were in the open and visible possession of property more than sufficient to pay the note, under this proof it was held, that there was no breach of the guaranty, and that the note was good within the meaning and terms of the guaranty.

In this case, the plaintiff commenced an action against the makers of the note, and the sheriff, who served the writ attached property and took a receipt from the makers of the note and one other, and in consequence of his liability, growing out of the insolvency and failure of his receiptors, he paid the debt to the plaintiff—Held—that in such a case, the sheriff is not entitled by subrogation to the right and remedy of the plaintiff against the defendant on the guaranty, as this right of subrogation exists only against the makers of the note.

The payment, by the sheriff in such a case, will inure to the benefit of the guarantor.

ASSUMPSIT in four counts; in the *first* count, the plaintiff set forth in substance, that at Barnard on the first day of April, 1846, Daniel and Hiram Aikens, by their promissory note of that date, for value, promised the defendant to pay him or order the sum of $200, on demand and interest annually, and afterwards, to wit, at Barnard, on the first day of January, 1847, the defendant indorsed said note to the plaintiff, and that plaintiff on the day last aforesaid, presented said note to the said Daniel and Hiram Aikens, that they neglected and refused to pay the same, whereof the defendant had notice, and became liable to plaintiff, &c.

The *second* count sets forth, " that the said Daniel and Hiram

Aiken, at said, Barnard, on the first day of April, 1846, by their certain other promissory notes in writing by them signed, for value &c. promised the defendant to pay him or order the sum of $200, on demand and interest, and the defendant, afterwards, to wit, on the first day of January, 1847, said note being unpaid, requested the plaintiff to purchase said note, and to induce the plaintiff to become the purchaser of said note, he, the defendant by his indorsement in writing on the back of said note, ordered the same to be paid to the plaintiff agreeably to its tenor, and thereby further undertook and promised the plaintiff that the said note should be paid by the first of January, 1850, and the plaintiff avers that confiding, &c.'

The *third* count sets forth, "that the defendant, at said Barnard, on the first day of January, 1847, in consideration that plaintiff at the special instance and request of the defendant, would purchase of him a certain other promissory note, dated the first day of April, 1846, payable to the said defendant or his order on demand and the interest annually, for the sum of $200, signed by Daniel and Hiram Aikens, which note was then due and payable, faithfully undertook and promised the plaintiff that the said makers of said note were good and responsible for the amount of said note, and should so remain and be, till the first day of January, 1850, and that said note and the payment thereof could be enforced and collected of them at any and all times up to said first of January, 1850, and the plaintiff avers that relying on said promise and undertaking of the defendant, he did then and there, to wit, on said first day of January, 1847, purchase &c." The count also contains an averment, that the makers of said note, were not good and responsible for said note, and did not so remain at and till the times by the defendant promised, but became, and were long before said first day of January, 1850, to wit, on said first day of January, 1847, poor, irresponsible and destitute of property and ever since have so remained and still are, and that plaintiff has taken all due and lawful means to make collection, &c. of all which defendant has had due notice, whereby the defendant has become liable, &c.

The *fourth* count sets forth, "that the said defendant at said Barnard, on the first day of January, 1847, in consideration that the plaintiff at the special instance and request of the defendant,

would purchase of him a certain other note dated the first day of April, 1846, for the sum of $200, signed by Daniel and Hiram Aikens, payable to defendant or his order on demand and interest annually, indorsed upon the said note the words following : " I hereby guarantee this note good until January 1, 1850," and thereto signed his, the defendant's name, thereby undertaking and promising to the plaintiff that said note was good and should remain collectable as against the said signers thereof till said first day of January, 1850. The count also contained an averment that plaintiff, relying on said guarantee, purchased said note, and also that said note did not remain good and collectable, but that the said makers long before the said first of January, 1850, became poor, &c.

Plea, *non assumpsit*, and trial by jury.

The plaintiff, on the trial, offered the note and indorsements, of which the following is a copy :

"BARNARD, April 1st, 1846.

"For value received of Clark Chamberlin, I promise to pay him or his order, two hundred dollars on demand, and the interest annually." (Signed,) DANIEL AIKENS,

HIRAM AIKENS, Surety."

(Indorsed,) " I hereby guarantee this note good until January 1, 1850." (Signed,) " C. CHAMBERLIN."

This guarantee indorsed on said note was conceded to have been made by the defendant, on the 12th day of January, 1849, on the occasion of his transferring the same to the plaintiff, for a valuable consideration.

The defendant objected to the admission of said note and guarantee under either count of the declaration ; but the court permitted the same to be read to the jury ; to which decision the defendant excepted.

It was also conceded, that on the first day of January, 1850, payment was demanded of the makers of said note, and that the same was not paid, and that afterwards, on the same day, notice was given to the defendant, that said note had that day been presented to said makers, and payment demanded and it was not paid, and that the plaintiff looked to defendant for payment of the same.

The plaintiff conceded, that on said first day of January, 1850,

Hammond v. Chamberlin.

the makers of said note were the owners of, and in open and visible possession of property real and personal more than sufficient to secure this debt.

The plaintiff offered evidence tending to prove, that before that time several suits had been commenced against said makers of said note, by various creditors, and that the same were served by nominal attachments of personal property and receipts taken by the officer though no property was ever in fact taken and removed, but that the property described in the said returns and receipts would include the property owned and possessed, by said makers of said note, on the first of January, 1850, and that said suits were then pending.

.To this testimony the defendant objected, and the same was excluded by the court; to which decision the plaintiff excepted.

It appeared, that on the first day of January, 1850, the plaintiff sued out a writ of attachment, in his behalf, on this note against the makers thereof, and delivered the same for service, the same day to the sheriff, (who had served the attachments and taken the receipts, aforesaid,) and the same was afterwards by him, returned with his return thereon, that he had served the same by attaching certain personal property of the defendant therein named, sufficient to secure said debt. Said sheriff did not in fact take and remove said property, but relied on a receipt for said property signed by the makers of said note and one Gifford. That the action was duly entered in court, and the plaintiff recovered judgment therein, for the amount due on said note, and his costs, and that he duly and seasonably took out execution thereon, and delivered the same to said sheriff to charge said property, and that the sheriff duly and seasonably demanded said property of said receiptors, but the same was not produced to said sheriff or said execution paid ; that after the expiration of the life of said execution the plaintiff called on the said sheriff for the payment thereof, who thereupon paid the plaintiff the amount thereof; that afterwards the said sheriff commenced an action on said receipt and recovered judgment thereon, but has been unable to collect the same ; the said makers of said note and said Gifford having become insolvent.

The County Court, December Term, 1853,—COLLAMER, J., presiding,—directed the jury to return a verdict for defendant.

Exceptions by plaintiff.

XXVI        27

*Converse & Barrett* for plaintiff.

I. The first question is, what is the legal character of the defendant's indorsement?

If the defendant is to be regarded an indorser, waiving demand and notice till January 1, 1850, then surely plaintiff is entitled to recover.

The plaintiff insists *such is* the character of the indorsement.

In the case of *Russell* v. *Buck*, 11 Vt. 166, the court say the paper would have been good evidence against defendant if he had been sued as *indorser*. And BENNETT, J., was of opinion the paper declared on was an *absolute* and not *conditional* guaranty. The words of guaranty, are, " I hereby guarantee to said R. the *collection* and payment of the above note, on condition he does not call on me till the first of May, 1831." See cases cited by BENNETT, J.

In *Wheeler* v. *Lewis*, 11 Vt. 265, the guarantee was in these words " which I warrant *good* and *collectable* until the first of July, 1834." The suit was on the guarantee, which was a paper independent of the note and not on its back. The court said that plaintiff, having commenced suit against the maker, showed that he understood he was obliged to, and that he must be bound by it. See also *Foster* v. *Barney*, 3 Vt. 60, and *Partridge* v. *Davis*, 20 Vt. 499, and *Sylvester* v. *Downer*, 18 Vt. 32.

II. This is an absolute engagement that the note should be paid by the first of January, 1850. The engagement that it shall be " *good* " till January 1, 1850, amounts to saying it shall be paid at that time.

Can there be any such thing as a note being " *good*," unless it will insure the pay ? The money for the amount, at the time stipulated is what makes it " *good*."

III. If this indorsement is to be regarded as a collateral guarantee of the *goodness* of the maker, it is an engagement that they should be " *good* " January 1, 1850. No proceedings were necessary to *test* their goodness before that time, on the part of the plaintiff.

IV. The court erred in excluding the testimony offered with reference to the maker's responsibility, or erred in their decision of what constituted " *goodness*," within the defendant's undertaking.

Can a person be said to be " good " in a legal or commercial

sense, who is owing much more than he is worth, although he may have property in his hands?

And how could it be said that the makers had *ability to pay this note*, when their property was all attached on debts, to a much greater amount than its value?

V. The court erred in deciding that because the note could have been collected out of Gifford, the *receiptor*, if pursued with diligence, therefore the *makers* were "*good*" within the meaning of defendant's undertaking.

It is difficult to see how the fact, that some innocent third person, as receiptor or sheriff, is drawn in by operation of law, and made *responsible* for the debt of a *bankrupt*, makes that bankrupt *good* and *responsible*.

*E. Hutchinson* for defendant.

The defendant was entitled to the instruction given, (to return a verdict in his favor,) upon various grounds.

I. The written guaranty produced by plaintiff did not support either count of his declaration.

It did not support the first count for the reason, that it is not an *absolute*, but a conditional guaranty—requiring exertions to collect the note of the makers, and notice of failure before suit brought. *Sylvester* v. *Downer*, 18 Vt. 32.

The case of *Partridge* v. *Davis*, 20 Vt. 500, relied upon by the plaintiff, is no authority to the contrary; as in that case the guaranty was absolute, not conditional.

For the same reason it did not sustain the second count, which alleges the guaranty to be "that the said note should be paid by the first of January, 1850."

In the *third* count the guaranty is set up in these words, "that the makers of said note were good and responsible for the amount of said note, and should so remain and be, till the first day of January, 1850, and that the said note and payment thereof could be enforced and collected of them at any and all times, up to the said first day of January, 1850."

That is by no means the legal effect of the guaranty given in evidence. *Wheeler* v. *Lewis*, 11 Vt. 265.

The *fourth* count is liable to the same objections.

II. The makers of the note, (as the case shows,) on the first

day of January, 1850, owned property which might have been attached, more than sufficient to secure this debt; and so were *in fact good*, even upon the plaintiff's construction of the guaranty. And it could not vary the case, for plaintiff to have shown, (as he offered to,) that the sheriff, who had his writ, had previously made merely nominal attachments, &c. And the testimony was properly excluded.

III. The direction of the court was right, for the additional reason, that the note guarantied by the defendant, was subsequently to said first day of January, 1850, *actually* secured by an attachment and receipt of property of the makers, which proved available to produce satisfaction of the debt to the plaintiff of record.

The guaranty has been fulfilled, upon every construction contended for. The makers of the note were *in fact* " *good* " on the first day of January, 1850, and if the officer did not get *his* pay, it is his own fault or misfortune.

But suppose the court should consider the testimony offered, improperly excluded. Although the general rule is, that for such cause, however slight its bearing, a new trial must be granted; yet, if it appear from the whole record, that the excepting party would not be entitled to a judgment, had the testimony been received, this court will not for such cause open the case, but will affirm the judgment. *Morse* v. *Crawford*, 17 Vt. 499.

The opinion of the court was delivered by

ISHAM J. The note on which the plaintiff has declared, was executed in common form by Daniel and Hiram Aikens, payable to the defendant or order on demand, and was afterwards transferred to the plaintiff under the following written guaranty : " *I hereby guarantee this note good until January* 1, 1850." It is insisted that there is a variance between the several counts in the declaration and the legal liability arising from this obligation. On this question it becomes necessary to determine the legal effect of the contract or guaranty, placed on the back of this note. The defendant guarantied the note *good* until January 1, 1850. He did not promise to pay the note on that day, nor that it should be paid by the makers, as was the guaranty in the case of *Partridge* v. *Davis*, 20 Vt. 500. It is an obligation on his part having rela-

tion merely to the solvency and ability of the makers to pay the note; in other words, the defendant agreed that during the period mentioned in the guaranty, the makers of the note should be in that condition, that payment of the note could be enforced against them, if legal diligence was used for that purpose. The note was *good*, if during that period, they had the means of payment, or if payment could be enforced by legal measures. The contract of the defendant was collateral, and arose only upon the inability of the makers of the note to pay it, and of the plaintiff to collect it, when the contract matured. This construction of that guaranty is in accordance with the obvious intention of the parties.

That being the legal effect of this contract of guaranty, no recovery can be had under the first or second count in the declaration, for the defendant is not liable as indorser ; nor on an absolute engagement to pay the note on that day, if the makers neglected to do it. We think, however, a recovery may be had on the other counts, and that the legal effect of the contract is sufficiently set forth, to avoid the question of variance. The third count states the defendant's promise to be " that the makers of the note were good and responsible for the amount of the note, and should so remain until January 1, 1850, and that payment could be enforced at any time until that period." The fourth count sets out the contract in its words, and by averments treats the obligation thereby created, as it is set forth in the third count. In each of these counts, we think, the legal effect of that contract of guaranty is sufficiently set forth. They differ only in the form or mode of setting out the same thing.

The liability of the defendant on his guarantee commenced when that degree of insolvency on the part of the makers existed, which rendered them unable to pay the note, or the plaintiff to collect it. In both of these counts it is averred, that the makers of the note were not before nor on the 1st day of January, 1850, good or responsible for the note, but on the contrary were poor, irresponsible, destitute of property, and the notes uncollectable of the makers. These averments, state a breach of that contract of guaranty ; sufficiently so, to charge the defendant, and under those counts, we think the contract of guaranty was properly received in evidence.

The general question in the case, therefore arises, whether upon the facts stated in the exceptions, the defendant is liable upon this guaranty. The plaintiff is not the party in interest. The suit is prosecuted for the benefit of the sheriff, by whom the debt has been paid to the plaintiff. The defense which is interposed by the defendant, rests upon two distinct and independent grounds; and we are satisfied that they are available in the case for that purpose. In the first place, the evidence introduced shows that there has been no breach of that contract or guaranty. It is conceded in the case, that on the 1st day of January, 1850, the makers of the note were not only the owners, but were in the open and visible possession of property, both real and personal, more than was sufficient to secure and pay this debt, and it does not appear that any attempt was made to show that a different state of things existed at any time between that date, and the time of giving the guaranty. It cannot be said, therefore, that before or at the time the guaranty terminated, the makers of the note were not good or responsible for its payment, nor that the plaintiff was unable to enforce its collection. So long as the makers continued in that situation, with those means at their disposal, and subject to an attachment of their creditors, the note was good, the makers were able to pay it, and the creditor could enforce its payment. This view of the case is not avoided by showing that previous attachments had been placed upon their property; for the whole object is attained, so far as this guaranty is concerned, if they were so disposed of, that the makers of the note, retained their property in their possession, and held it subject to their own disposal, and to the attachment of their creditors. The fact that there has been no breach of that contract of guaranty, has met with absolute confirmation, in the circumstance that on the 1st of January, 1850, the plaintiff attached the property of the makers, for which a receipt was obtained by the sheriff, and for the responsibility of which, the sheriff and the county were liable. Upon that liability of the sheriff, created by that attachment, the plaintiff, to whom this guaranty was given, has obtained payment, and actual satisfaction for his debt. There has been, therefore, no breach of this contract of guaranty; the note has proved good to him, as guarantied, for it has been paid to him on the attachment of the property of the makers of the note, and from liabilities growing out of it.

In the second place, if there was a breach of that contract of guaranty, the defendant is discharged from his liability upon it, by the payment of that debt to the plaintiff by the sheriff, in consequence of his liability arising out of the insolvency and failure of his receiptor. It is insisted, however, that by the payment of the debt, the sheriff is entitled by subrogation to the right and the remedy of this plaintiff, against the defendant on this guaranty. For that purpose, and on that ground, this suit is prosecuted. It is undoubtedly true, that so far as the sheriff has been compelled to pay this debt out of his own means, he is entitled to the right and remedy of the creditor against the makers of the note. To that extent he may be treated as the purchaser of the claim, but it is only as against the makers of the note that this right of subrogation exists. 1 Lead. Cas. in Equity 96, note (2.) 2 Vernon 608. *Parsons* v. *Briddark.*

The suit that was commenced against the makers of the note, was for the benefit of the creditor and this defendant, who at the time stood as surety or guarantor for the makers of the note. When the sheriff attached the property, and took a receipt for the same, he stood, to the extent of the value of the property in the shoes of the debtors, the makers of the note; and the creditor, as well as the guarantor, could look to the sheriff for the application of the property attached, in payment and satisfaction of the note, and of the defendant's contract of guaranty. If by the insolvency of the receiptor or by his neglect, the property attached has been lost, or rendered unavailable, and the sheriff rendered liable for the debt, his payment of the same was, so far as the creditor and this defendant as guarantor was concerned, a payment by one, who stood in the shoes of the makers of the note; for it was paid in consequence of his liability arising from the attachment of their property, on this debt. The defendant stood as a surety or guarantor, to the creditor for a given period for the goodness of the note, or the ability of the makers to pay it. When it appears, therefore, that during the period for which the guaranty was given, the note was good, and the makers able to pay the debt, there is no propriety in saying, that the defendant, as guarantor, is now to be made liable for the inability of the makers to pay the note, when that inability arose subsequently to the period when that guaranty terminated; nor is there any proprie-

ty in saying that the sheriff shall be subrogated to the remedy of the creditor against the defendant, as guarantor, when that claim would have been satisfied and cancelled by the property of the makers of the note, but for the neglect of the sheriff in making the attachment, or in taking insufficient receiptors for the property.

We are fully satisfied therefore, that the defense in this case, is available, on the ground that there has been no breach of the contract of the guaranty, and also, that the payment of the debt by the sheriff will inure to the benefit of this defendant, and was a discharge of his liability on his guaranty ; and though the sheriff may have paid the debt out of his own means, he can be subrogated to the rights of the creditor, only as against the makers of the the note, and not against the defendant.

The judgment of the County Court is affirmed.