### WILLIAM C. BENTON *v.* FREDERICK FLETCHER.

*Promissory note.   Guaranty.*

If the holder of a negotiable promissory note write and sign upon the back of it a guaranty that it shall be collectible when due, such indorsement, though sufficient to transfer the legal title to the note, does not create the same liability upon him, as an unconditional indorsement, but merely makes him liable as a guarantor that the note is collectible.

Benton *v.* Fletcher.

When one receives a note with a guaranty that it shall be collectible when due, he is bound, before he can maintain an action against the guarantor, to pursue with reasonable diligence all legal means of collecting the note out of all the prior parties to it, whether makers or indorsers, unless they are entirely insolvent.

And if any such prior party die before the maturity of the note, it is the duty of the holder to exhaust all legal means afforded by the probate court, and by the county court on appeal, for collecting the note out of such deceased party's estate, before he can proceed against the guarantor.

In this case the defendant transferred to the plaintiff two promissory notes, executing at the same time upon them a guaranty that they should be collectible when due. One of the prior indorsers died before the matur ty of the notes, but his estate was solvent, and the plaintiff presented the notes before the commissioners on his estate, and they were allowed at their full amount. Afterwards the plaintiff petitioned the probate court to order the legal representatives of the deceased indorser to pay the debts of the estate, but the probate court, although full three years had expired since the issue of letters testamentary on his estate, refused to make such an order, from which refusal the plaintiff appealed to the county court, and during the pendency of this appeal in the county court the plaintiff sued the defendant upon his guaranty; *Held,* that this action was prematurely brought, and that the appeal in the county court ought to have first been prosecuted to an issue, and resulted in a failure to collect the note.

*Quære,* whether if the plaintiff had procured a decree from the probate court ordering the payment of the debts, which had not been obeyed, he could have sued upon the defendant's guaranty until after he had exhausted the remedy of a suit upon the executor's bond.

ASSUMPSIT against the defendant as indorser and guarantor of two promissory notes. Plea, the general issue, and trial by the court, at the March Term, 1858,—BENNETT, J., presiding.

The plaintiff introduced in evidence two notes for one thousand dollars each, dated January 14, 1854, signed by Henry W. Catlin, and payable to the order of J. & J. H. Peck & Co., at the Farmers & Mechanics Bank, one in one year and the other in two years from date, with annual interest. These notes were indorsed by J. & J. H. Peck & Co., and by Henry Leavenworth. Upon the back of each of these notes were written the following guarantees, in the following order:

" I warrant this note collectible when due.

(Signed)          F, FLETCHER,"

"For value received I hereby guaranty that this note as allowed is collectible.

Burlington, Vt., Jan. 3, 1857. (Signed) W. C. BENTON": and also the following entry by the commissioners upon H. Leavenworth's estate:

"Allowed in favor of W. C. Benton *v.* Leavenworth's Estate,

| | |
|---|---|
| note, | $1000.00 |
| Interest to 15th of March, 1855, | 70.60 |
| | $1070.60." |

It appeared that at or about the date of these notes Fletcher received them from Catlin for a valuable consideration, with the indorsements of J. & J. H. Peck & Co., and Henry Leavenworth upon them, and that these indorsements were made solely for the accommodation of Catlin. Fletcher transferred them to the plaintiff, and also, at the same time, wrote and signed the above guaranty upon the back of them for a valuable consideration, at least six months before they fell due, and also before Leavenworth's death, which took place in May, 1854. The plaintiff executed the guarantees signed by him upon the backs of the notes at the date thereof, and thereby transferred them for a valuable consideration to Vernon P. Noyes, who was the owner of them at the trial of this case.

It was conceded by the defendant that when the first note became due, both Catlin and J. & J. H. Peck & Co. had become totally insolvent, and that they have ever since remained so, and that the plaintiff was thereby excused from any attempt to collect the notes of either of them by suit. It was also admitted that the notes were protested for non-payment, and seasonable notice thereof given to Leavenworth's executor, and to J. & J. H. Peck & Co.; also that the notes while owned by the plaintiff were, about the 15th of March, 1855, presented by him before the commissioners on Leavenworth's estate, and were allowed by them in his favor against that estate for their full amount, including interest, agreeably to the minute made at the time on the back of them, as above set forth.

It further appeared from the probate records concerning Leavenworth's estate, which were introduced in evidence, that in July,

1857, the plaintiff, or Noyes in the plaintiff's name, in virtue of the allowance of these notes against that estate, duly petitioned the probate court for a settlement of the executors's account; that notice was duly given thereof, and the time for hearing thereon fixed for the 13th of July, 1857, on which day the parties appeared, and the plaintiff, or Noyes in his name, then filed a petition in the probate court to have an error corrected in a former accounting by the executor; that on the 17th of August, 1857, the plaintiff, or Noyes in his name, also filed a petition in the probate court for an order for the payment of the debts of the estate by the executor; that these several petitions were duly heard and decided on the 10th of October, 1857, when the probate court made a decree correcting the error in the former account of the executor, and settled his account, but refused to make an order for the payment of the debts, from which refusal the petitioner appealed to the county court, where such appeal was pending at the time of the trial of this case.

Evidence was introduced in regard to the solvency of Leavenworth's estate, the amount of his debts remaining unpaid, and the value of the assets in the executor's hands, from which the court found that Leavenworth died solvent, and that his estate was still solvent, there being assets sufficient to pay all its debts and the expenses of administration. It also appeared that no order of sale of these assets had been made by the probate court, or applied for by the executor, but that by the will of Leavenworth the executor had power to sell the real estate without an order of court.

It was also admitted by the parties that Leavenworth's will was proved in June, 1854; that his estate was then represented by his executor as insolvent, and that commissioners were thereupon appointed; that the probate court had extended the time for paying the debts of the estate, from time to time, for the full three years allowed by the statute; and that these three years had expired before the presentation of the petition to the probate court for the payment of the debts of the estate, as above mentioned, and before the 21st of October, 1857, the time of the commencement of this suit.

It also appeared that before this suit was commenced, the

defendant had notice of the failure of the plaintiff to collect these notes by the various proceedings above mentioned, and was requested by the plaintiff to pay them, which he refused to do. The plaintiff claimed on trial, that a recovery by him in this suit would enure to the benefit of Noyes.

Upon these facts the defendant insisted that the plaintiff was not entitled to recover, but the county court held otherwise, and rendered judgment for the plaintiff for the amount of the two notes and interest, to which the defendant excepted. The defendant also moved in arrest of judgment for insufficiency of the declaration, but the court overruled the motion, to which the defendant also excepted.

*Asahel Peck* and *Jacob Maeck*, for the defendant.

1. The defendant's indorsement was a conditional one, which imposed upon the plaintiff as a *condition precedent* to the defendant's liability, the duty of diligently using all legal means for the collection of the notes out of the prior parties, whether maker or indorsers; *Foster* v. *Barney*, 3 Vt. 60; *Russell* v. *Buck*, 11 Vt. 166; *Wheeler* v. *Lewis*, 11 Vt. 265; *Beach* v. *Bates*, 12 Vt. 68; *Sylvester* v. *Downer*, 18 Vt. 32; *Hammond* v. *Chamberlin*, 26 Vt. 406; *Willis* v. *Green*, 5 Hill 232; *Moakley* v. *Riggs*, 19 John. 69; *Burt* v. *Horner*, 5 Barbour 501.

This duty has not been performed so far as regards Leavenworth, one of the prior parties to the notes.

His death makes no difference with the plaintiff's duty, but it is still incumbent upon him to pursue Leavenworth's estate.

Notwithstanding Leavenworth's death, if he had been the maker, and it were now sought to charge an indorser; or if, on the other hand, he were now sought to be charged as indorser, it would be necessary to prove in the one case a presentment to, and demand upon, his legal representative, and in the other, a seasonable notice of non-payment to such representative; *Cayuga Bank* v. *Bennett*, 5 Hill 236; *Oriental Bank* v. *Blake*, 22 Pick. 206; *Merchant's Bank* v. *Birch*, 17 John. 25; *Willis* v. *Green*, 5 Hill 232.

If the death of a party does not excuse the holder from his duty when the form of the indorsement imposes the duty to make

demand and give notice, it can not have that effect when the form of the indorsement, as in this case, imposes the duty of enforcing collection of prior parties.

There is no breach of the guaranty if the note is collectible. The case shows it is collectible out of Leavenworth's estate, which is abundantly solvent. The law points out as clear and certain a remedy against a solvent estate of a deceased person, as against a living one. The guaranty is not that the note is collectible in any particular way or manner, but that it is collectible by due diligence and by the application of all legal remedies; *Taylor* v. *Bullen*, 6 Cowen 624; *Dwight* v. *Williams*, 4 McLean 581.

2. But even if by Leavenworth's death the plaintiff is relieved from the obligation to endeavor to collect these notes of his estate, still upon the facts in the case this action can not be maintained, because the notes are negotiable, and the plaintiff, has indorsed them to Noyes, who is still the owner and holder of the notes, and is enforcing collection thereof against Leavenworth's estate. If the defendant's guaranty is negotiable, Noyes is the only one who can maintain a suit against him, and that too in his own name. But if the guaranty is not negotiable, then the suit can not be sustained, because the defendant can not be compelled to pay, unless on such payment he can have the notes. These the plaintiff can not deliver to him, as Noyes is the owner of the notes, and is prosecuting them in the county court against Leavenworth's estate; *Little* v. *Ingalls*, 13 N. H. 44.

*George F. Edmunds*, for the plaintiff.

1. The defendant is liable as a common indorser. He was the *holder* of the note as *indorser* of Leavenworth, and himself indorsed and delivered it to the plaintiff, with the warranty superadded to the ordinary liability of an indorser.

The obligation of indorser and that of guarantor are not inconsistent, and both can stand as perfect contracts; *Partridge* v. *Davis*, 20 Vt. 499.

The only person, who can pass a title to a note payable to order, is an *indorser*, and it can only be done by *indorsement;* hence it seems obvious that Fletcher's indorsement was one in the *legal*

and *binding* sense of that term, unless it is held (which we suppose is not claimed) that Fletcher's indorsement did not pass the title to the plaintiff.

. Fletcher's contract was then a double one, 1st, that he would pay absolutely on non-payment by Catlin, on due presentment and notice; 2d, that without presentment and notice he would warrant that it could be enforced by ordinary process of law.

· If it is said that there is a distinction between an absolute and a conditional guaranty, it is replied that such distinction does not affect the co-existence of either with a common liability as indorser. If an *absolute* guaranty, which is an entirely separate contract, can co-exist with a liability as indorser, so also can a conditional guaranty (which is also a separate contract, and equally if not more analogous,) co-exist with it.

2. The plaintiff was only bound under the guaranty to proceed against the *maker* of the notes.

The warranty was that *the notes* were collectible when due.

The contract of the maker of a note, and that of the indorser, are entirely different and legally distinct contracts. The promise of the indorser is not in any legal or correct sense, *the note;* the promise of the maker is.

As well might it be claimed that such a form of contract would require the party to whom it was made, to exhaust *all* his collateral remedies against prior guarantors, sheriffs and sheriffs' bail, the county, and against the jailor for an escape of the principal debtor after commitment on execution. But such a rule would render such contracts practically inoperative and valueless.

3. But under the most favorable construction for the defendant, the plaintiff has done all that the law or justice requires in the premises.

· When the guaranty was made Leavenworth was living, and hence the warranty that the note was collectible, if it applied to the indorsers at all, was a warranty that by the ordinary process of law it was collectible against *him personally,* not against his asignees in bankruptcy, or against his grantees, to whom he might have conveyed his property to defraud his creditors, but against *the person* whose name was on the paper. That person having ceased to exist, of course the note was not collectible against him,

and the guarantor became liable at once, so far as that branch of his contract was concerned.

It may be conceded, that where by law the executor or administrator succeeds to the place of a deceased person, and is liable to a suit at law, just as the deceased would have been upon his contracts, to the extent of his assets, the death of the person liable to a suit would furnish no excuse for not sueing; and there would always be an administrator, etc., or if no one took administration, whoever held the goods of the deceased would be administrator, etc., *de son tort.* Such is the case in 6 Cowen, 624, cited on the other side. But here we have a representation of insolvency, and assets in land.

4. But if any proceedings against the estate of Leavenworth were necessary, all that could be required would be that the claims should be presented and prosecuted to allowance, which is the final judgment, *beyond which there is no coercive process* to compel payment issuable upon it.

Within the three years mentioned in the statute (Comp. Stat. p. 355, § 30), declarations of dividends and orders of payment are wholly *within the discretion of the probate court;* and the case shows that this discretion has been always exercised *against further proceedings,* by several extensions of time for payment of the debts, etc., to the utmost limit of the three years.

5. The utmost limit allowed by law for the payment of this claim having passed, the plaintiff could not then proceed by any suit at law to compel payment. *He could have no execution* against the estate of the executor.

He applied for an order for payment which was denied by the probate court. *Had the order been made, no execution or other final process could have followed it.* The only remedy in that case would have been a suit against the executor, either for the debt allowed or on his bond; Comp Stat. p. 356, § 40.

From all this, it appears that all remedy in the note itself is *exhausted* when the final allowance is made. The party can make no further executive action to carry the allowance into effect. He has therefore *prosecuted that proceeding* to a final termination without effect. All beyond that are new *mesne* proceedings, which

result through successive steps in a new action at law, and so on indefinitely. The law does not require any such indefinite experiments as these.

6. The note can not be said to be collectible *when due*, under such circumstances.

When the notes fell due no process to compel payment could be instituted, as to Leavenworth, until the expiration of the time *then already* allowed for the executor to pay the debts of the estate of Leavenworth. It was *legally impossible* to enforce the collection *then.*

*Reasonable* diligence is all that the law requires in such a case, and in the absence of express authority (and we are unable to find any) sustaining the construction insisted upon by the defence, we submit that this court ought not to embarrass commercial guaranties with such extreme and destructive conditions.

POLAND, J. The first question properly arising in this case, is whether the defendant is liable to the plaintiff as an *indorser* of the two notes mentioned in the declaration. Upon each of the notes the defendant wrote and signed the following words : "I warrant this note collectible when due." The plaintiff claims that the defendant, by thus putting his name on the back of the note, with these words written above it, incurred a double or twofold liability, first, as *indorser*, by which he made himself liable to pay the note absolutely to the plaintiff in case of non-payment by the maker at maturity, on proper demand and notice thereof to him, and secondly, as a *guarantor*, by which he became bound to pay the notes, provided the plaintiff should use reasonable diligence to collect the notes, and be unable to do so.

It is insisted that inasmuch as the transfer of the note in this form by the defendant to the plaintiff, would convey the legal interest in the note to the plaintiff, and enable him to maintain an action thereon against the prior parties, *as indorsee*, that therefore the defendant is also an *indorser*, and that not only is the legal transfer of the title made out, but also, as incident to that, the ordinary contract or obligation of an unrestricted or general indorsement is to be inferred.

We are not disposed to deny but that the plaintiff may treat what is written and signed by the defendant on these notes, as an indorsement or transfer of the legal interest of the notes to himself, so that he could sue on them as *indorsee*, or rather we think that the plaintiff would be authorized to add to what is written and signed by the defendant, an order directing the note to be paid to himself. A general or blank indorsement of a negotiable note, by the payee, or any subsequent holder, comprehends in itself two things, first, the transfer of the legal interest in the note to the indorsee, and secondly, the obligation assumed by the indorser. When the indorsement is general, or in blank, and is not controlled by evidence as to any actually different contract between the parties, the law attaches a particular meaning and extent to the contract, which is, that if the note is not paid when due by the maker, on proper demand, and notice of such nonpayment is seasonably given to the indorser, he will pay it. But it is still in the power of the party indorsing to transfer the legal title to the note, and at the same time to make any limitation or restriction he pleases as to his own liability as indorser, or to wholly absolve himself from any and all liability whatever, by indorsing the note without recourse. But in all such cases, however the indorser may limit or qualify, or wholly restrict his liability; the transfer of the note is equally perfect, and he is an *indorser*, and the person taking it is *indorsee*, and may sue upon the note as such.

We see no objection to holding, that whenever the payee or other holder of a negotiable note transfers it absolutely, and puts his name upon the back of it, however he may restrict his own liability, whether it be absolute or conditional, or whether he is wholly relieved from any liability, the holder may still treat it as an indorsement of the note to him, and add the proper words of transfer to himself. But upon the plainest principles, when the indorser, instead of indorsing a note in blank, leaving the law to establish the measure and extent of his liability, writes out and signs a contract by which his liability is to be measured, that is to be regarded as the only contract into which he has entered, and having thus expressed the measure of his liability, there is no room left for legal inference and implication as to what his contract is.

It is a plain case of the application of the familiar maxim: "*Expressio unius, exclusio alterius.*"

The plaintiff's view of the law upon this point is claimed to be supported by a decision of this court, *Partridge* v. *Davis*, 20 Vt. 499. The defendant in that case sold and transferred a note with these words upon the back of it, signed by the defendant, "I guaranty the payment of the within note," and it was held that the defendant might be made liable as indorser, upon proof of demand and notice, and also that he was liable as guarantor, without proof of any demand and notice, if the note was not paid at maturity. The court held that this was an absolute guaranty that the note should be paid at maturity, and that neither demand and notice of non-payment, or any proceedings to enforce collection, were necessary in order to render the defendant liable.

In short, the court held that the defendant's liability under his express contract, was precisely the contract which the law would imply from a blank indorsement, except that by it he had waived any obligation to make demand and give the defendant notice of non-payment, and that his liability being the same as that of an indorser, he might be sued as such. But the court did not decide that when the defendant's express contract was conditional only, and different from that of an indorsee, that the law would superadd, by implication, another and a different contract.

But the very point made by the plaintiff upon this part of the case, seems to have been decided in the subsequent case of *Hammond* v. *Chamberlain*, 26 Vt. 406.

In that case the defendant, on the transfer of a note to the plaintiff, signed the following words on the back of the note: "I hereby guaranty this note good until January 1, 1850." The plaintiff insisted that the defendant was liable as an indorser, but the court held otherwise, and decided that these words only amounted to a conditional guaranty that payment could be enforced against the makers if legal diligence was used for that purpose. The whole current of decisions in this State, upon these conditional guaranties, seems to be founded upon the same general idea of their nature and effect.

The liability of the defendant being only that of a conditional guarantor, a long and unbroken series of uniform decisions in

Benton *v.* Fletcher.

this State, commencing with *Foster* v. *Barney*, 3 Vt. 60, have established, that in order to make the defendant liable, the plaintiff must first use all reasonable diligence to collect the note, and that it is only upon failure to enforce collection of the note, that the defendant's obligation to make payment arises.

But the plaintiff insists that by the terms of this guaranty he was only bound to attempt to enforce collection against Catlin, the maker, and that he was not bound to attempt collection of Leavenworth, who, upon the face of the note, appeared to be an indorser, and that as Catlin was admitted to be insolvent when the notes matured, he was not bound to make any effort to collect the note.

. It might well admit of doubt whether, under this view of the law, he would not have been bound to proceed against Leavenworth, as a maker, under the decisions in this State, he not being the payee of the note, and having put his name upon the note before it was originally negotiated; but we are not disposed to put our decision on that ground.

Treating Leavenworth merely as an indorser of the note, we think the plaintiff was equally bound to take the necessary legal steps, not only to make him liable as indorser by making demand and giving notice to him of non-payment, but that he was also bound to use all legal means to enforce payment from him as well as of the maker. He was not in form an original party to the note, but by indorsing it he became a party to it, and all the books speak of an indorser as a *party to the note*, as well as the maker and payee. Leavenworth having thus become a party to the note before the defendant executed this guaranty to the plaintiff, and liable to pay it if the maker did not, we can see no reason why it was not equally the duty of the plaintiff to attempt collection from him as from any other party, and such must have been the understanding of the parties. A guaranty that a *note* is good, or that it is collectible, amounts to this, that the parties liable upon it are able to pay it, or that collection can be enforced against them, and there is no sense in applying this to one party more than another, when they are both liable. The case of *Moakley* v. *Riggs*, 19 Johns. 69, was an action upon a guaranty, much like the present, of a note where there were indorsers upon

it. The plaintiff had instituted legal proceedings against the indorsers, but not against the maker, and it was held that the defendant was not liable on his guaranty. SPENCER, Ch. J., who delivered the opinion, says, " The guaranty extends as well to the maker of the note as to the indorsers. The plaintiff accepted the note with the several and respective liabilites of the maker and indorsers, and his title to demand of the defendant the performance of the guaranty depends on his showing, either that he has with reasonable vigilance pursued a due course of law, that is, commenced and prosecuted suits to effect against all the parties to the note, and has thus ascertained that the note was not good and collectible, or he must set forth a legal excuse for omitting to do so." And again he says, " The defendant has a right to insist that he entered into this guaranty under the express condition that he was not to be liable unless the note turned out not to be good or collectible after a regular prosecution against the maker and indorsers of the note with due and reasonable diligence." The law thus laid down by so eminent a judge, we think is entirely just and reasonable, and exactly applies to this point in the present case, and is fully adopted as the law of the case.

But the plaintiff insists that if he was, by the terms of the guaranty, bound to proceed against Leavenworth. the indorser, as well as against Catlin, the maker, he was excused from any such effort, because Leavenworth died before either of the notes matured. If the death of Leavenworth put an end to all remedy for enforcing payment of the note by legal means, we should be fully prepared to adopt this view of the plaintiff.

But it is not contended that it did, and the case shows that he was represented by an executor before the notes fell due, and that he left ample estate for the payment of these notes, and all his other debts. The plaintiff presented the notes before the commissioners on his estate and they were duly allowed, and the case was in due progress of settlement in the probate court when this suit was commenced. The claim of the plaintiff is, that the fair construction of the defendant's guaranty is, that he could enforce payment of the note by an ordinary suit at law against those liable to pay the note, *personally;* and that as he was prevented from having this *form of remedy* by the death of the party, he

was excused from using such other remedy as the law gives to enforce payment from the estate of the party, however ample. But in our opinion no such narrow construction is required, or even allowable, and no specific form or character of legal remedy is to be intended, nor is it requisite that it shall be an action in common law form, or against the person of one or all the prior parties to the note, but the holder is bound to use all legal remedies, whatever their form may be, to realize payment from the prior parties, or from their property.

By our law, the estates of debtors, both real and personal, are made liable for the payment of their debts, and tribunals are established and legal means provided equally efficient to that end, as the ordinary courts of law are to enforce payment of their debts while in life, and it is as much the duty of the plaintiff to resort to the remedies afforded by the law through these courts, as it would be to the common law courts and their process, if Mr. Leavenworth had been alive when the notes fell due. This is supported by the case of *Taylor et al.* v. *Bullen*, 6 Cow. 624. The defendant in that case had sold a note to the plaintiffs, and warranted the collection of it, and promised to pay all costs on all suits legally commenced for its recovery. Before the note matured the maker died, but left sufficient estate for the payment of his debts, but no administration had been taken thereon. It was held that the plaintiffs could not recover of the defendant, until they had first exhausted such remedies as the law gave for enforcing payment out of the maker's estate. That seems a stronger case than the present, for there no representative of the maker had been appointed, and it does not appear precisely what form of remedy he would have had in that State. But the court say that "if there is property enough the law points out sufficient remedies," and the court held that the remedies afforded by law, whatever they were, must be pursued. The class of cases cited by the defendant's counsel, where it has been held that where the maker of a note has deceased before the note matures, still, unless demand be made upon his legal representative, the indorser is discharged, and also that when the indorser has deceased, notice is equally necessary to be given to his representative to make his estate liable, go strongly in support of our conclusion on this point.

The plaintiff claims too, that if he was bound to resort to such remedies as the law afforded against Leavenworth's estate, he has pursued such remedy to its legal termination, without producing payment. As before stated, the plaintiff procured the notes to be properly allowed by the commissioners on the estate, which was the first proper step toward enforcing payment out of the estate. The settlement of the estate would seem to have been delayed on account of the litigation of certain large claims presented against it, so that the time for paying debts was extended by the probate court for the full period allowed by law, three years, and then the plaintiff applied to the court for an order on the executor to pay the debts, which for some reason the court refused to make, and thereupon the plaintiff took an appeal, and such appeal was pending when this suit was commenced.

But it is quite evident that the plaintiff had not exhausted his legal and coercive remedies in the probate court. A creditor whose claim is allowed by commissioners, is not considered as having obtained a final judgment in the probate court until he has obtained an order or decree against the administrator or executor for the payment of the debts, or some dividend thereon, and until that is done, legal proceedings in the probate court must be considered as pending. Whether if such order had been obtained and the administrator or executor then refused to make payment of the debt, the plaintiff would be bound to commence a suit against the administrator or executor on his bond or otherwise, is not necessary now to be decided, though for one, I think he would be. Such action is considered merely as a means of enforcing the judgment of the probate court, as but a mode of obtaining an execution upon their decree. See *Orange Co. Bank* v. *Kidder et al.*, 20 Vt. 519. But at all events we are all satisfied that the proceeding was not ended till a final decree was obtained in the probate court, and that the plaintiff has no right to assume in advance, that such decree when obtained would not be paid. The plaintiff complains, and perhaps justly, that the proceedings in the probate court have been long delayed, and that even after the last extension of time, in the power of the court to grant, had expired, the court refused to make an order for the payment of the debts. Whether the settlement of the estate has been pro-

ceeded with as rapidly as it should have been, or whether the court properly refused to make the order prayed for, can not affect the legal rights of the parties, but it should be remembered that the proverbial delay of the law, and even of the inefficiency of courts, has not been exclusively confined to courts of probate. We are all agreed that the plaintiff had not so far performed the condition of this guaranty, by exhausting his legal remedies for the collection of the notes, when he commenced this action, as to be entitled to recover.   This view of the case renders it unnecessary to decide the other questions that have been made in the case.

The judgment of the county court is therefore reversed, and a new trial granted.