## DENNIS C. BULL *v.* ALBERT BLISS.

### *Guaranty.*

To render a general guaranty, that a note is good and collectible, binding upon the guarantor, the means to collect the note of the maker must be resorted to within a reasonable time. BENNETT, J.

A guaranty in the following terms, " I warrant this note good and collectible for two years from date," is a conditional guaranty, but by its very terms means that the note shall remain good for the full period of two years.

In such a case the utter insolvency of the maker of the note within two years constitutes, *prima facie* at least, sufficient excuse for an omission to attempt to collect it of him.

The same strictness is not necessary in making a demand of the maker of a note and giving notice of non-payment in order to charge a guarantor, as is required in the case of an indorser. BENNETT, J.

Such a guaranty amounts in effect to an insurance of the solvency of the principal for a given time, and *prima facie*, it would be a nugatory ceremony to require a demand of a person utterly insolvent.

A guarantor of a note, on which there are no previous indorsers, is not discharged by the want of notice to him of the default of the maker, unless he has been damnified on account of not receiving such notice.

It seems reasonable, however, that even if the principal be actually insolvent, notice of his default should be given to the guarantor before a suit is brought against him. BENNETT, J.

ASSUMPSIT upon a guaranty indorsed upon a note for three hundred dollars, signed by one Erastus Bliss, dated October 25, 1849, and payable to the defendant or bearer on demand, with interest. The guaranty was executed by the defendant about the 11th of January, 1850, upon the transfer of the note from him to the plaintiff, and was as follows : " I warrant this note good and collectible for two years from date." Plea, the general issue, and trial by jury, at the June Term, 1856,—PECK, J., presiding.

The plaintiff's testimony tended to show that in September, 1851, Erastus Bliss became utterly insolvent, and continued insolvent until and subsequent to the expiration of the two years mentioned in the guaranty.

It further appeared that in September, 1851, the plaintiff made diligent inquiry for property belonging to Erastus Bliss for the pur-

pose of securing the note thereon, but could find none; and that he called on him for payment, but without success.

In the spring after the plaintiff purchased the note, the defendant went to California where he remained until 1855. Upon the day after his return the plaintiff for the first time gave him notice of the non-payment of the note and of his inability to collect it of Erastus Bliss. This notice, however, was before the commencement of this suit.

The defendant requested the court to charge the jury that if the plaintiff, by bringing a suit at any time within the two years, could have collected the note, the defendant was discharged from any liability under the guaranty; that such suit should have been brought within a reasonable time after receiving the note; and that it was the duty of the plaintiff to demand payment of Erastus Bliss within a reasonable time after receiving the note, and if he failed to pay it, to give the defendant notice within a reasonable time after the expiration of the guaranty.

But the court charged the jury that the defendant was bound by his guaranty that the note should be collectible during the whole of the two years; that the plaintiff had a right to wait until a reasonable time before the expiration of the two years before proceeding to collect the note; also, that if the jury found that Erastus Bliss was totally insolvent, the plaintiff would be excusable for not bringing a suit; as to a demand upon Erastus Bliss, the court told the jury that the rule was not so strict as in the case of an indorser, and that if, from his insolvency, a demand upon Erastus Bliss would have been nugatory, it was unnecessary that it should have been made.

As to a demand upon the defendant, the court told the jury that before bringing suit upon the guaranty, it was necessary for the plaintiff to make a demand upon the defendant, but that he was not bound to notify him while he was in California. To which charge and refusal to charge as requested the defendant excepted.

*H. G. Edson* and *H. B. Smith*, for the defendant.

The term " good and collectible " implies that diligence must be used on the part of the holder in testing whether the note is collectible or not, within a reasonable time after it comes into his hands.

Bull *v.* Bliss.

The very force of the word collectible implies active measures on the part of the holders to enforce its collection, and if for two years the holder uses due diligence and cannot collect the note, then, and then only, is the defendant liable upon his indorsement. *Wheeler* v. *Lewis,* 11 Vt. 265 ; *Foster* v. *Barney,* 3 Vt. 60.

This case is not the same, nor controlled by the case of *Hammond* v. *Chamberlain,* 26 Vt. 406. That was a guaranty that the note was *good* until a time named, this that the note should be " *good and collectible,*" which terms imply active measures, which the holder should have commenced when the note was passed to him.

The case is much the same with *Wheeler* v. *Lewis,* 11 Vt. 265. In that case the note was warranted *good* and *collectible,* and upon argument that the plaintiff was not bound to resort to legal measures until the expiration of the time limited in the contract, the court, REDFIELD, J., said " the limitation used seems to have reference to the time when the question of collection should be determined."

It was the duty of the plaintiff, at least in a reasonable time after he took the note of the defendant, to demand payment of Erastus Bliss.

The defendant was entitled to notice. He was a party to the note ; it is presumed to have been taken in the ordinary way of business, and the reason of the rule which so strictly requires notice in the case of the ordinary indorsement, would seem to require, certainly, notice in this case in a reasonable time. The two years expired the 25th of October, 1851. Notice was given by the plaintiff to the defendant the 2d day of March, 1855. If, by the terms of the indorsement, the plaintiff was obliged to use *any diligence* of *any* sort in demanding pay and giving notice, certainly the defendant is discharged. *Sylvester* v. *Downer,* 18 Vt. 32.

*Aldis & Burt* and *Fuller,* for the plaintiff.

Total and utter insolvency is a sufficient excuse for not suing Erastus Bliss. *Sanford* v. *Allen,* 1 Cushing 473 ; *Hammond* v. *Chamberlain,* 26 Vt. 406 ; *Russell* v. *Buck,* 14 Vt. 147. The terms of this guaranty were, that the note should remain good and

10

collectible for the whole period. *Hammond* v. *Chamberlain*, 26 Vt. 406; where no period is fixed during which the debtor is warranted to remain good, like *Foster* v. *Barney*, 3 Vt. and *Beach* v. *Batey*, in 12 Vt., and it is a general warranty that the note is collectible, there the theory of reasonable diligence is applicable. The meaning of this guaranty is that the note shall be collectible for two years.

As to notice back to Albert Bliss, no notice back is required in an absolute guaranty, and a conditional guaranty becomes absolute by— first, breach of the condition— second, notice of the breach and demand of payment.

Notice and demand before suit is brought is sufficient. If there is a want of reasonable notice back, by which the defendant has been injured, *he* may show it as a defense to the suit. Until then his breach of his promise is not healed. The notice is presumed sufficient till the defendant shows that he has suffered some injury by delay.

The opinion of the court was delivered by

BENNETT, J. The language of this guaranty is, "I warrant this note good and collectible for two years from date," and the case shows that it was given on or about the 11th of January, 1850.

It is claimed by the defendant's counsel that this contract, by its very terms, implies a condition that the person taking it shall use all reasonable diligence to collect the note of the maker within a reasonable time after the note was passed from the defendant to the plaintiff, and that it must be fully tested whether the note was collectible or not *within the two years.*

That this guaranty is a *conditional* one, under the repeated decisions of this state as well as in other courts, can not be questioned; and upon a general guaranty that a note is *good* or *good and collectible*, it is equally well settled that the means to collect it of the maker must be resorted to within a reasonable time. But the question is, what is the true construction of the guaranty now before us? Is it a guaranty that the note should be good and collectible for a part of two years, or for the full term? There can be no implication that the note is warranted good if collected

within a reasonable time. Such an implied condition is at war with the language of the contract. It is warranted *good and collectible for two years,* and we think the obvious meaning of the parties was, that the note should be, and remain good and collectible for the full period of two years, and if it did not, there would be a breach of the contract. In *Hammond* v. *Chamberlain,* 26 ' Vt. 406, the language was, " I hereby guarantee this note good until the first day of January, 1850," and in that case it was held that the obligation of the guarantor had relation to the solvency and ability of the makers of the note to pay it, and that the contract was that the makers, for the time limited, should be and remain in such a condition that payment could be enforced by the due use of legal process ; and that the liability of the defendant only arose upon the inability of the makers of the note to pay it, and of the plaintiff's inability to collect it. In that case the note was given to the guarantor in 1846, payable to his order on demand, and the guaranty was executed on the 12th of January, 1849.

The case of *Wheeler* v. *Lewis,* 11 Vt. 265, is much relied upon as being opposed to the views of the court now taken. That case must stand upon the ground that the plaintiff, having *elected to* commence his suit at a term of the court before the expiration of the time for which the note was warranted *to be good and collectible,* was bound to use proper diligence in the prosecution of his suit against the principal debtor. The court which tried that case charged the jury that the plaintiff was bound to prosecute the suit according to the ordinary course of collection suits, and the jury found, under the charge of the court, that the debt was lost for the want of such a prosecution of the suit, and this ruling was sanctioned by the supreme court. The case is one where the legal means adopted by the plaintiff to collect the note of the maker, proved *abortive* by reason of negligence in the use of such means.

In the case now before us the jury have found that within the two years, the principal debtor became wholly and utterly insolvent, and this at least, *prima facie,* is a sufficient excuse for an omission to attempt to collect the note of the maker. The law does not require the performance of an idle act.

In regard to the necessity of a demand for payment of the maker of the note, the same strictness is not required to charge a guarantor as would be necessary in order to charge a drawer or indorser of a bill or note in an action thereon, *where, by the custom of merchants,* a demand is necessary to charge other parties on the bill or note, notwithstanding the bankruptcy of the acceptor of the bill or maker of the note. The guarantor in this case, in effect, insures the solvency of his principal for a given time, and it is to be taken, at least *prima facie,* that it would be a nugatory ceremony to require a demand of payment to be made of a person entirely and hopelessly insolvent. If it could be shown in a case of this kind that the note would have been paid if demanded, notwithstanding the insolvency of the maker, it might require a different consideration. We deem it safe to say at least, that *prima facie,* a demand of payment of the maker of this note was not necessary upon the facts found by the jury. See *Warrington* v. *Furbor,* 8 East. 242; *Hitchcock* v. *Humphrey,* 5 M. & G. 559; *Walton* v. *Mascall,* 13 M. & W. 453.

It is commonly laid down in the books that a man merely guaranteeing the payment of a bill or note, but not a party to it, is not discharged by the neglect of the holder to give him notice of the dishonor of it, unless he has been actually prejudiced by such neglect, and in the case of *Murray* v. *King,* 5 B. & Ald. 165, it was held that though a man indorse a bill, yet if he also give a bond for its payment, a want of due notice of its dishonor is no defense to an action on the bond. The defendant in this case is not sought to be charged as indorser of this note, but simply as a guarantor, and there are no previous indorsers upon it who are entitled to due notice of its dishonor in order to give a remedy against them. The law merchant does not extend to guaranties, and as the case shows the utter insolvency of the principal, there is no ground to claim the defendant has been damnified for the want of an earlier notice. It is not necessary to say what should be the rule as to notice if there had been previous indorsers upon the note, but we think this case, in this respect, stands the same as if the guaranty had been made by one not a party to the note. This case shows notice by the guarantor of the default of the principal before the suit was brought against him, and it may be reasonable to require

this, even though the principal be utterly insolvent, that the guarantor may not be subjected to a suit and the payment of costs for the want of such notice. It has been frequently held that if the notice is not in time to enable the guarantor to save himself harmless the defendant must show it, and that in a case where the defendant could not have suffered for want of it, it is dispensed with.

As the counsel for the defense have not made a point of any other questions arising on the bill of exceptions, we shall treat them as severally waived.

The result is, the judgment of the county court is affirmed.