THOMAS RANSON AND ANOTHER, *vs.* FANNY SHERWOOD.

By the common law of Connecticut, a blank indorsement of a note not nego-
tiable, implies, *prima facie*, a contract on the part of the indorser that the
note is due and payable according to its tenor, that the maker shall be of
ability to pay it when it comes to maturity, and that it is collectible by the
use of due diligence on the part of the holder:—and a blank indorsement
of a negotiable note, for the benefit of the payee, is attended with the same
legal incidents as a blank indorsement of a note not negotiable.

In order to retain his hold upon such an indorser, the holder of the note must
sue the maker by attachment as soon as the note is due, unless the maker is
then insolvent.

In a suit brought by the holder of a note against such an indorser, the mere
fact that the maker of the note provided no funds to pay it at the time and
place of payment, but suffered it to be protested for non-payment, does not
furnish *prima facie* proof that the maker was insolvent when the note fell
due; and the mere fact, that the holder presented it for payment, at the
place of payment, when it fell due, and caused it to be protested for non-
payment, and caused notice thereof to be given to the indorser, does not fur-
nish *prima facie* proof that the holder used due diligence to collect the note
when due.

ACTION of assumpsit tried to the court upon the general
issue.

The declaration contained four special counts and the
common money counts. The first was in the ordinary form,
counting upon a note of $316.96, dated August 5th, 1852,
executed by the defendant, and payable to the order of the
plaintiffs, nine months after date, at the Pequonnock Bank
in Bridgeport. The second was similar to the first, except
that it averred the execution of the note by the defendant
"jointly and severally with one Franklin Sherwood." The
third count alleged the execution of a similar note by one
Franklin Sherwood, and the delivery thereof to the plaintiffs
by him; that the plaintiffs thereupon became and were the
owners thereof; that afterwards, on the same day, the defend-
ant, in consideration of one dollar paid to her by the plain-
tiffs and of other good and valuable considerations, endorsed
said note and thereby promised the plaintiffs that said note
was then good and collectible, and that the same should be

good and with due diligence collectible, when it should fall due, and that the said Franklin Sherwood, the maker thereof, then was, and when said note should fall due and payable should be, of sufficient ability to pay the same; that afterwards, when it became due, it was presented to said Pequonnock Bank for payment, and that payment was then and there demanded of said Franklin Sherwood; that said Franklin Sherwood then neglected and had ever since neglected and refused to pay the same,—of all which the defendant afterwards, &c., had notice; that when said note fell due and payable, said Franklin Sherwood was, and ever since has been, utterly insolvent and unable to pay said note or any part of it; that it was not collectible of said Franklin Sherwood when it fell due; and that it had never been paid to the plaintiffs.

The fourth count was similar to the third, except that it alleged that on said 5th day of August, 1852, said Franklin Sherwood, being indebted to the plaintiffs in the sum of $316.96 for goods, &c., offered to satisfy said indebtedness by giving to the plaintiffs his note endorsed by the defendant; that the plaintiffs thereupon agreed to accept such a note; that said Franklin thereupon made his note, &c., and that the defendant on the same day, at his request, in order to give credit to the said Franklin, endorsed said note. The promises of the defendant, and the breach, were stated as in the third count.

Upon the trial in the superior court the plaintiffs introduced the following evidence.

1st. A note, of which the following is a copy, the execution and endorsement whereof were admitted:

"$316.96. Nine months after date, I promise to pay to the order of T. Ranson & Co., three hundred sixteen 96-100 dollars, for value received, at Pequonnock Bank. Bridgeport, August 5th, 1852. (Signed,) Franklin Sherwood." (*Endorsed* —"Fanny Sherwood.")

2nd. A protest of said note; which was received by agreement of the parties in the same manner as though authenti-

cated by the oath of the notary, and of which Fanny Sherwood had notice.

3d. Thomas Ranson, one of the plaintiffs, testified as follows:

" We had an account with Franklin Sherwood, unsettled, and it was agreed between us that it should be settled by his giving his note, endorsed by his mother. According to that agreement he brought this note, endorsed by his mother. We would not take *his* note, and the only consideration for taking the note was the mother's endorsement. No part of the note has ever been paid. Thomas Ranson & Co. are the owners of it, and have been since the day it was given." On cross-examination, he said:—" I endorsed the note and left it at the Pequonnock Bank for collection; it remained with the bank until after it was due."

4th. Franklin Sherwood testified as follows: " The note was written, and I carried it to my mother and asked her to endorse it. I told her I owed T. Ranson & Co. $316.96— that I could get an extension of time on a note at nine months, I thought. She objected to endorsing any more paper. I then stated that the note was drawn payable to T. Ranson & Co., and that as she would be the second endorser she would not be holden unless T. Ranson & Co. failed, of which there was no probability. That is the sum and substance of all our conversation. I am under the impression that there was an attachment at this time on my goods, in favor of T. Ranson & Co. A suit had been commenced against me by them. I did not tell any thing of this to my mother." On cross-examination he said:—" The note is not in my hand-writing—only the signature. I gave it to Ranson & Co. at Black Rock, in the evening. I handed Ranson the note and asked him if it would be satisfactory, and he said it would."

The foregoing evidence was all that the plaintiffs produced. They thereupon rested their case; whereupon the defendant moved for a non-suit, which was granted by the court. The plaintiffs then filed their motion to set aside the nonsuit,

which motion was refused; and thereupon the evidence was certified as a part of the record; and the record was brought before this court by the plaintiffs upon motion in error.

*Noble* and *Frye*, for the plaintiffs.

1. The plaintiffs are entitled to recover, under the first and second counts against the defendant, as maker of the note. *Josselyn* v. *Ames,* 3 Mass., 274. *Hunt* v. *Adams,* 5 id., 358. *Hunt* v. *Adams,* 6 id., 519. *Ulen* v. *Kittredge,* 7 id., 233. *White* v. *Howland,* 9 id., 314. *Moies* v. *Bird,* 11 id., 436. *Birchard* v. *Bartlett,* 14 id., 279. *Sumner* v. *Gay,* 4 Pick., 311. *Baker* v. *Briggs,* 8 id., 122. *Austin* v. *Boyd,* 24 id., 64. *Herrick* v. *Carman,* 12 Johns., 159. *Nelson* v. *Dubois,* 13 id., 175. *Campbell* v. *Butler,* 14 id., 349. *Allen* v. *Rightmere,* 20 id., 365. *Neelson* v. *Sanborne,* 2 N. Hamp., 413. *Palmer* v. *Grant,* 4 Conn., 389. *Dean* v. *Hall,* 17 Wend, 214. *Labron* v. *Woram,* 1 Hill, 93.

2. If not maker the defendant is guarantor, and the plaintiffs can recover under the fourth count.

3. The plaintiffs can recover under the common counts. *State Bank* v. *Hurd,* 12 Mass., 172. *Hinsdale* v. *Eells,* 3 Conn., 383. *Eagle Bank,* v. *Smith,* 5 id., 71. *White* v. *Brown,* 19 id., 577. *East Haddam Bank* v. *Shailor,* 20 id., 18.

*Sturges,* for the defendant, contended that the defendant was only a guarantor of the note; and that it was necessary for the plaintiffs, if they would have made her liable on her guaranty, to have brought immediate suit by attachment against the maker in case of non-payment, unless he was at the time insolvent; and that the fact that the note was protested for non-payment was no proof of such insolvency; relying upon the case of *Perkins* v. *Catlin,* 11 Conn., 213.

HINMAN, J. The nonsuit was properly ordered in this

case. There was no evidence that the maker of the note was insolvent or unable to pay it when it fell due, except barely what arises from the fact that he provided no funds to pay it at the time and place where it was made payable, but suffered it to be protested for non-payment. And the holders made use of no diligence to collect it, except that they caused it to be presented for payment at the place of payment, when it fell due, and caused it to be protested for non-payment, and notice thereof to be given to the defendant, as if she was an ordinary indorser of a negotiable note payable to herself. The law applicable to the case was fully and explicitly laid down in the case of *Perkins* v. *Catlin*, 11 Conn., 213, after a review of all the authorities on the subject, and we can only repeat what was said in that case, that " by the common law of Connecticut, a blank indorsement of a note not negotiable, *prima facie* implies a contract on the part of the indorser that the note is due and payable according to its tenor, that the maker shall be of ability to pay it when it comes to maturity, and that it is collectible by the use of due diligence." It was also held in that case that the indorsement of a negotiable note, indorsed in blank for the benefit of the payee, and not indorsed by him, was to be regarded in the same light as the indorsement of a note not negotiable, as subject to the same legal construction, and as imposing upon the payee the same legal diligence as if the note was not negotiable. The diligence imposed on the holder of indorsed notes not negotiable, and of negotiable notes indorsed by a third person who is not otherwise a party to them, has always been to sue the note by attachment as soon as it is due, unless the maker is insolvent. It follows from what has been said, that no recovery could be had upon the first and second counts in the declaration, because in those counts the defendant is treated as the maker and not as the indorser of the note in question. And upon the other counts no recovery could be had, because there was no evidence of the insolvency of the maker, and the holders of the note made use of no diligence to collect it of him. It did not therefore appear in any way but that the note would

have been paid, or the payment of it secured, if the holders had used the proper diligence to collect it. . It has not been thought necessary to refer to any other of our numerous cases on the subject of indorsed notes of this description, as they were all brought together and most thoroughly examined in the case to which we have referred. And we had supposed that decision had finally settled any doubts that had formerly existed on the subject. The Massachusetts and New York cases cited have really no bearing on the question, as it has long been understood that our law upon this subject differs in many respects from that of those states, and the enquiry is what is our own law and not what is theirs. We do not find any error in the judgment complained of.

In this opinion the other judges concurred.

Judgment affirmed.