BARNABAS ALLEN AND OTHERS *vs.* SAMUEL H. RUNDLE AND OTHERS.

A guaranty that a note is collectible is a conditional one, the condition being that diligence should be used in collecting it.

Some courts of high authority in this country have held that the only evidence that the note is not collectible is the failure of legal proceedings, diligently pursued, to result in collection. Other courts of equal authority have held differently. It seems more in accordance with the general principles adopted by this court in cases of guaranty, and more just, not to require a suit, with all its attendant expense and trouble, where it must be fruitless, and to allow under some circumstances the diligence to be waived by the party for whose benefit it is required.

But where the exact diligence required is expressly stated in the contract, the want of it will not be excused.

In a suit upon a guaranty of the collectibility of a note the burden of proof is on the plaintiff to show, either that he has exhausted all legal remedies, or that the maker was insolvent, or that the guarantor had waived the legal proceedings.

*B* executed to the plaintiffs his note on demand, on the back of which the defendants signed the following guaranty:—"For value received, we

jointly and severally guarantee the within note good and collectible until paid." In a suit brought on the guaranty several years later, and without having brought suit against the maker, whom the plaintiffs claimed to have been insolvent, the plaintiffs offered evidence that it was understood between the maker, the guarantors and themselves at the time the note was made, that the maker had signed it without consideration, at the request and for the accommodation of the guarantors, and upon their promise that they would take care of it and pay it within a short time. Held that this evidence was inadmissible as going to establish at the very making of the note an oral agreement in direct conflict with the written guaranty.

And held that it was not admissible for the purpose of establishing a waiver by the guarantors of the institution of proceedings against the maker for the collection of the note, as it would produce the same effect with a material change of the written contract.

Nor admissible to estop the guarantors. Promissory representations as to future action dependent upon a contract to be entered into, do not create an estoppel.

Under our statute with regard to fraudulent conveyances (Gen. Statutes, p. 345,) it is not necessary to prove a specific design to defraud the particular creditor who assails the conveyance; the intent to defraud one creditor renders the conveyance void as to all.

The language of the statute differs somewhat from that of 13 Eliz., c. 5, but it is essentially copied from it and must receive a similar construction.

Where there are no facts in evidence on which a request for a charge is based, the judge is not bound to give any instruction to the jury upon it.

The omission to charge in writing upon written requests, as required by statute (Gen. Statutes, p. 442, sec. 2,) would be ground for granting a new trial, unless waived by the party making the request or occasioning no injury.

ASSUMPSIT on a guaranty; brought to the Superior Court, and tried to the jury before *Hitchcock, J.*

Upon the trial the plaintiffs offered in evidence the following note and guaranty, the execution of which was admitted:

"7,000. DANBURY, Nov. 25th, 1871.

"On demand, I promise to pay to Barnabas Allen and William F. Taylor, seven thousand dollars, with interest semi-annually, and the taxes that may accrue on the same, for value received. CHARLES BENEDICT."

The guaranty was written on the back of the note and was signed by all the defendants.

" For value received we jointly and severally guarantee the within note good and collectible until paid.

> S. H. RUNDLE.
> WM. P. SEELY.
> ANDREW HULL.
> ISAAC W. IVES.
> CHARLES HULL.
> GEORGE C. WHITE.
> W. F. LACEY."

The defendants claimed in defence that the plaintiffs had not used due diligence to collect the note of Benedict, the maker, and that therefore no suit could be maintained by them against the defendants as guarantors. In answer to this claim the plaintiffs claimed that their failure to commence suit against the maker was legally excused:—first, because at the commencement of the present suit the maker of the note was utterly insolvent, and second, because it was understood between the maker, guarantors and payees of the note at the time of its execution and delivery, that the maker had signed it without consideration, at the request of and for the accommodation of the guarantors, and upon their promise that they would take care of it and pay it within a short time from its date.

Under the second claim the plaintiffs offered evidence in chief, to prove that in the year 1871 the Bartram & Fanton Sewing Machine Company was indebted to them in the sum of $7,000, and was being pressed for payment; that William P. Seeley, one of the defendants, and who was acting and managing for said company, of which he was a stockholder, in paying off its debts, proposed to the plaintiffs, that as the company would want to use what ready money it had, it would get up a note and get some one to sign it, whom the stockholders, or some of them, would indemnify, and would sign as guarantors on the back of the note, and that they thought they could get Charles Benedict to let them use his name. That thereafter Charles Hull, one of the defendants, and also a stockholder in the com-

pany, went to Benedict for the purpose of inducing him to lend his name as maker of the proposed note, and for that purpose promised him that he should never be called upon to pay it and that no harm should ever come to him from signing it, but that the guarantors would pay it. That afterwards Hull and Seeley gave the note in question to the plaintiffs in accordance with their proposition, and they and the other guarantors, all of whom were stockholders in the company, told the plaintiffs that they had got from Benedict his name, and had agreed to protect him and to pay the note, and that no harm should come to him from signing it; and that the plaintiffs accepted the note in payment of their debt against the company. That afterwards Benedict also informed the plaintiffs that the defendants had promised to protect him, and that it was agreed when he signed it that he was not to pay it, and should have no trouble with it; but that the parties who signed on the back of it should take care of it. Also that the defendants repeatedly after the execution of the note, and before the commencement of this suit, upon being pressed for payment, agreed to pay the same, and acknowledged the promise made to Benedict, that he should not be called upon to pay it, and themselves paid the plaintiffs six months' interest on the note, which was all the interest that had been paid thereon.

To the testimony of the promise made by Hull to Benedict at the time of the execution of the note, the defendants objected, on the ground that it could not be admitted to vary or contradict the written terms of the note and guaranty, and that it was a conversation *inter alios*. And a like objection was specifically made to all the rest of the testimony. The plaintiffs claimed the admission of the testimony solely as bearing upon the question of their claimed failure to use due diligence in endeavoring to collect the note from the maker, before having recourse to the defendants, and the court admitted it for that purpose only, and ruled that it was inadmissible for the purpose of varying or contradicting the note and guaranty.

Under the plaintiffs' first claim, they offered evidence to prove, and claimed to have proved, that at the maturity of the note and ever since, Benedict, the maker, was and had been utterly insolvent and without property from which it could be collected. This the defendants denied, and offered evidence to prove that, at the time he signed the note, he was of abundant pecuniary ability to pay it; that from that time continuously until April 28th, 1873, more than $30,000 worth of property in Danbury stood in his name and belonged to him; that on that day he transferred all his property to his wife, who still held possession of more than $25,000 worth of the same; that the only consideration for the transfer was the purchase by Mrs. Benedict, in 1863, of certain debts, amounting to $23,000, in favor of certain creditors against her husband, for fifteen per cent. of their face value, and a debt of $4,500, due from Benedict to Mrs. Benedict's father, and which had been set out to Mrs. Benedict upon the distribution of her father's estate; that Mr. and Mrs. Benedict were married in 1828, and that the money with which she purchased the debts was the proceeds of property given to her by her husband at a time when he was not indebted; that the transfer was made because one Burr had three days previously brought a suit against Benedict for the claimed illegal use of a patent right, and that the plaintiff Taylor drew, witnessed and took the acknowledgment of the transfer.

It was conceded that the plaintiffs had been the holders of the note from the time it was made, and that Taylor had advised Benedict not to pay it as it would be unfair and unjust.

On the contrary the plaintiffs offered evidence to prove, and claimed they had proved, that in 1863 Benedict owed to different parties notes amounting then to $23,000, which he was pressed to pay, but was then unable to pay; that his wife, with her own sole and separate funds, purchased the notes, which were thereupon legally assigned to her individually, and all of which Mr. Benedict then and often thereafter repeatedly promised her to pay to her in full with

interest thereon, but never had paid; that the conveyance of April 28th, 1873, was made in good faith for the purpose of paying this indebtedness to his wife, without intent to avoid any debt or duty, but was made at that particular time because one Burr had a few days before brought to the District Court of the United States a petition for an injunction against Benedict's using a certain patent right, claimed by Burr to belong to him, with a prayer for an accounting and a claim for damages for an infringement of the patent right. That Benedict had always denied the patent right to be valid, and that he had ever infringed the same, and had from the first defended and was still defending against the suit, but that it had never been brought to or pressed for trial, and had for years lain dormant on the docket of the court. That at the time of his deed to his wife, he both claimed and believed, and ever since had claimed and believed, and contended, that he never was liable to said Burr, or indebted to any one except his wife. That Taylor acted simply as the scrivener in drawing the deed, and neither advised the giving of it, nor was consulted in respect to the Burr suit, but only as to the proper form of the transfer; and that the real estate conveyed by the deed did not exceed in value the amount due upon the claims so purchased by and transferred to the wife.

The defendants also claimed that Benedict was indemnified by a bond, for any loss that might fall upon him if he paid the note in suit; that all the defendants and fourteen other persons were obligors upon the bond, and that all promises and statements made by them or either of them concerning the payment of the note, were made by them as obligors upon the bond, and were so understood by all the parties. The plaintiffs denied that the bond was given to indemnify Benedict for loss upon the note, or was any protection to him if he paid it, or that the promises made by the defendants were based upon their relation as signers of the bond.

Upon the evidence in the case the defendants claimed and asked the court to charge the jury, that if they found

the facts concerning the transfer from Benedict to his wife, in April, 1873, as claimed by them, such transfer was void as to the plaintiffs, and that the plaintiffs could still collect the note in suit out of said property, and that it was their duty so to do; and that if this was not so, the plaintiffs had by their own fraudulent co-operation with Benedict in the transfer, rendered him insolvent, and therefore could not recover of the defendants.

The court refused so to charge, but instructed the jury as follows:

"It is a question of fact for you to decide, whether or not Benedict was insolvent when this suit was brought. The defendants claim he was not insolvent, because the transfer of April 28th, 1873, was fraudulent and void. If you find the transfer was made to defraud Burr, it would be void as to that claim, but our statute prevents it from being void as to any one except him whose debt was sought to be avoided. It is claimed that the transfer is void for inadequacy of price, as to creditors. I do not understand that any creditors are here asking to be heard. I think that the transfer should be treated, so far as this suit goes, as a valid transfer.

"But the plaintiffs claim that, whether or not the transfer was void, there has been a waiver of diligence by the defendants. I am inclined to think that if we consider merely the contract on the note and back, it was the duty of the plaintiffs to sue Benedict, if he had property. But the plaintiffs claim that this defence of failure to sue Benedict has all been waived; that the defendants had no right to expect the plaintiffs to look to Benedict; that at the inception of the note promises were made to Benedict, and to the plaintiffs when they took the note, that Benedict need not pay it. If you believe such promises were made, it does not make the defendants liable as principals, but they waive thereby their right to require of the plaintiffs that they should sue Benedict, because the plaintiffs had a right to rely upon these promises, even if they knew Benedict had property. If these promises were made, then the

plaintiffs were not bound to sue Benedict; if not made, then the defendants could require the plaintiffs to bring a suit against Benedict, if he had property, or if his property was conveyed away by the fault of the defendants."

Before the opening of the argument the defendants filed with the clerk and presented to the judge the following (among other) written requests to charge :—

4. "If the jury find that the conveyance of April 28th, 1873, from Benedict to his wife, was made with intent to avoid the Burr claim, then in a suit against him such conveyance was void, and the property so conveyed could be attached by the plaintiffs, then his creditors, and taken upon execution as his own estate, notwithstanding the consideration paid therefor by his wife."

6. "When the intent is ascertained in respect to a conveyance, the law pronounces whether it is fraudulent or not. It being admitted by Mr. and Mrs. Benedict, and entirely undisputed, that the conveyance of April 28th, 1873, was made in part on account of the pendency of the Burr suit, which had been commenced three days before, and in fear of and to avoid the possible consequences of that suit, such intent was in law fraudulent."

7. "The voluntary payment by Mrs. Benedict in 1863 of her husband's debts, did not create the relation of debtor and creditor between them, and was, in respect to his creditors existing in 1873, no consideration for the conveyance at that time."

8. "The payment by Mrs. Benedict in 1863 for the benefit of her husband, would not, as against his creditors in 1873, entitle her to then make a claim legal or equitable against him or his property for anything beyond the actual consideration by her paid. At most she could have only an equitable claim for the amount actually paid."        ,

9. "If the jury find the consideration of the conveyance from Benedict to his wife in 1873 was grossly inadequate, she acquired as against his then existing creditors only such an interest in the property as would be a fair equivalent for the actual consideration. In such case the remaining

interest in the property could be appropriated by his then existing creditors."

10. "If the jury find that the plaintiffs, without the knowledge of the defendants or either of them, assisted Benedict to convey away all his property to his wife for an inadequate and antecedent consideration, and with the intent to avoid the result of the Burr suit then pending, and took no steps to avail themselves of Benedict's property, and advised him not to pay the note in suit, they cannot recover."

13. "If a. holder of a note has lost his remedy against the guarantor by neglect or laches, a subsequent promise on the part of the guarantor to pay will not revive the obligation."

The judge did not charge in writing, but only orally, upon these requests, and instructed the jury as follows upon them respectively.

In relation to the fourth request: "If it was void, any creditor could pursue it. If void, it did not pass the title out of Benedict, except as it is governed by our statute."

In relation to the sixth request: "The first paragraph is true as a proposition of law. These fraudulent conveyances to avoid a particular claim are by our statute limited to such persons and claims."

In relation to the seventh request: "By the statute of 1863 the husband was entitled to the rents and profits of his wife's real estate and the use of her personal property. It is for you to say if there are any facts that bring that within this case. As against creditors it would be void. It is for you to inquire if any creditors complain. It is void as to the Burr claim, if that is ever put into judgment. Who is there here to complain?"

In relation to the eighth request: "That is correct, as against creditors. The question is, where are they and who are they?"

In relation to the ninth request: "It is a correct. proposition of law. Property can not be conveyed in large amounts for a pepper-corn. The question is, where are·the·

creditors? It is not enough to speak of them on paper. Where are they in court that do complain or can complain?"

In relation to the tenth request: "It is a correct legal proposition. If Benedict, when the note fell due, had property, they should have pursued his property. All that refers to the Burr suit; as I have said, our statute confines the invalidity to the person sought to be defrauded, to wit, to the holders of the Burr claim."

In relation to the thirteenth request: "If you think the defendants knew they were not liable, and promised to pay, that renews the obligation."

The defendants did not request the court to charge in writing, and no exception to such omission was taken at the time, nor until the filing of the present motion. The judge read the requests to charge to the jury, and charged upon each one orally as he read them.

The jury having returned a verdict for the plaintiffs, the defendants moved for a new trial for errors in the charge of the court and in the omission to charge as requested.

*L. D. Brewster* and *S. Tweedy*, in support of the motion, contended that it was the duty of the plaintiffs, if they would hold the defendants on their guaranty, to have brought suit against Benedict, or to show his utter insolvency, or to prove a waiver of such proceedings by the defendants; that the court erred in charging the jury that a conveyance of his property by Benedict to defraud a particular creditor was void only against that creditor; that such a conveyance being void against all creditors, and therefore against the plaintiffs, the latter could have attached the property and thus have secured payment of the note; that the evidence of the parol agreement of the guarantors to pay the debt themselves, without any proceedings against Benedict, made at the time the note was made, was inadmissible as varying the written guaranty, of which the condition that diligence should be used in collecting the note of the maker was a vital part; that it

could not be admitted to prove a waiver of such proceedings as it would be equally in conflict with the written contract; and that the omission of the judge to charge in writing upon the points presented in the written requests of the defendants, such written charge being required by statute, was a ground for granting a new trial.

*H. S. Sanford* and *E. W. Seymour*, with whom was *W. F. Taylor*, contra, contended that it was not necessary to proceed against the maker of the note by reason of his insolvency; that if he was not insolvent, such proceeding had been waived by the defendants, who were the actual debtors, they having agreed that the note should not be collected of the maker but that they would pay it themselves; that their agreement to this effect, though it might not be admissible to vary the written contract, was yet admissible to prove a waiver; that it did not affect the case that it was made at the same time with the note, as it is a well established rule that an endorser may, at the time of his endorsement, make a parol waiver of demand and notice; that this agreement could operate as an estoppel on the defendants, if in no other way; that the charge of the judge with regard to the effect of a fraudulent conveyance upon other creditors was in accordance with the language of our statute as to fraudulent conveyances; that if the judge was wrong in this or any other of his rulings the court could see clearly that justice had been done by the verdict, and that where this was the case a new trial would not be granted.

LOOMIS, J. On the 25th day of November, 1871, Charles Benedict gave his note to the plaintiffs for the sum of seven thousand dollars, payable on demand, with interest semiannually and taxes. On the back of this note was the following written guaranty, signed by each of the defendants:—" For value received, we jointly and severally guarantee the within note good and collectible until paid."

Although the declaration has a wider sweep, yet it is con-

ceded that the plaintiffs must recover, if at all, upon the contract of guaranty alone. All other grounds of action are excluded by the decision of this court when this case was previously before it. *Allen* v. *Rundle*, 45 Conn., 528.

Guaranties are either absolute or conditional. If *A* guarantees the collectibility or goodness of *B's* note to *C*, he does not absolutely guarantee its payment, but only that he will pay it in the event that *C* shall test the collectibility or goodness of the note by regular prosecution of suit against *B*, and shall be unable by due and reasonable diligence to enforce its payment. 2 Daniels on Negotiable Instruments, § 1769. In Edwards on Bills (2d Ed., side p. 238,) the doctrine is more fully stated as follows:—" A guaranty that a note is collectible is a conditional promise binding upon the guarantor only in case of diligence. In order to perfect the obligation so as to render him liable thereon, the guarantee must use diligence in the endeavor to collect his note, for it is a condition precedent. In other words, the obligation, which is inchoate, does not become absolute until the guarantee has performed the condition on his part; and it seems that if he fails to perform the condition precedent, so that in fact no obligation accrues and becomes perfect against the guarantor, even a subsequent and express promise to pay will not render him liable thereon."

In fixing liability on such a guaranty courts of high authority, notably those of the state of New York, hold that the only evidence that the note is not collectible is the failure of legal proceedings, diligently pursued, to result in collection. *Moakley* v. *Riggs*, 19 Johns., 69; *Thomas* v. *Woods*, 4 Cow., 173; *Taylor* v. *Bullen*, 6 Cow., 624; *Cumpston* v. *McNair*, 1 Wend., 457; *White* v. *Case*, 13 Wend., 543; *Loveland* v. *Shepard*, 2 Hill, 139; *Vanderveer* v. *Wright*, 6 Barb., 547; *Newell* v. *Fowler*, 23 Barb., 92; *Gallagher* v *White*, 31 Barb., 92; *Mosier* v. *Waful*, 56 Barb., 80; *Craig* v. *Parkis*, 40 N. York, 181.

And the same rule has been adopted by the courts of Wisconsin, Michigan and several other states. *Borden* v. *Gilbert*,

13 Wis., 670; *Bossman* v. *Akeley*, 39 Mich., 710. In the latter case COOLEY, J., giving the opinion of the court, after an able review of the authorities in the several states, referring to the New York doctrine, says:—" We believe that rule to be reasonable and to accord with the general understanding of the parties when such guaranties are given. The undertaking that a note is collectible, means that if legal proceedings for collection are diligently prosecuted at law they shall result in collection. It does not mean that the maker of the note is responsible or shall remain responsible, but that the debt shall be collected if the proper steps are promptly taken for the purpose. It may be that an officer would find attachable property where the witnesses knew of none; it may be that, with the large exemptions allowed by law, the debtor would choose to make payment rather than have the judgment stand against him, even when payment could not be enforced."

On the other hand, the courts of Ohio, Pennsylvania, Massachusetts, Maine and Vermont, while construing such a guaranty in substantially the same manner, yet hold that it is not necessary to institute a suit if the maker is insolvent, and they allow proof of the waiver of the condition by the guarantor. *Stone* v. *Rockefeller*, 29 Ohio St., 625; *McDoal* v. *Yeomans*, 8 Watts, 361; *McClurg* v. *Foyer*, 15 Penn. St., 293; *Miles* v. *Linnell*, 97 Mass., 298; *Gillighan* v. *Boardman*, 29 Maine, 79; *Wheeler* v. *Lewis*, 11 Verm., 265; *Bull* v. *Bliss*, 30 Verm., 127; *Dana* v. *Conant*, id., 246.

It is difficult to determine on which side is the weight of legal authority. The question in this state may perhaps be regarded as an open one. The only importance it has for the purposes of the present case is its bearing upon the question of evidence and upon the duty of the court relative to the thirteenth written request. If we adopt the New York rule, it would logically require all evidence of waiver to be rejected and a subsequent promise by the defendants would not relieve the plaintiffs from the consequences of their laches. We are not prepared to accept this rule, notwithstanding the force of logic and weight of

legal authority by which it is supported. The principles adopted by this court in the cases of *Perkins* v. *Catlin*, 11 Conn., 213, and *Ransom* v. *Sherwood*, 26 Conn., 437, and the fact that it seems more just and equitable not to require a suit, with all its attendant expenses and trouble, where suit must be vain, incline us so to hold, and to allow under some circumstances the diligence required by the law to be waived by the party for whose benefit it is required. Regard however must always be had to the terms of the contract of guaranty. Where it is so explicit as to leave no room for construction, that is, where the exact diligence required is all stipulated in the contract—in such case, though vain, the steps pointed out must all be taken, for the reason that the court will not dispense with what the parties have explicitly agreed to. *Dwight* v. *Williams*, 4 McLean, 581; *Moakley* v. *Riggs*, 19 Johns., 69; *Eddy* v. *Stanton*, 21 Wend., 255.

Accepting for the purposes of this case the more liberal rule for the benefit of the plaintiffs, we must nevertheless hold the guaranty a conditional one, and that the condition is precedent and an essential part of the contract, and that the burden of proof was therefore on the plaintiffs to show by appropriate evidence, either that they first exhausted all legal remedies without success, or that the maker was insolvent, or that the guarantors in some proper manner waived the legal proceedings.

The plaintiffs, in lieu of a strict performance of the condition, relied upon two claims :—1st, that the maker of the note at the commencement of the present suit was notoriously and utterly insolvent, and 2d, that it was understood between the maker, guarantors and payees of the note at the time of its execution and delivery, that the maker had signed it without consideration, at the request and for the accommodation of the guarantors, and upon their promise that they would take care of it and pay it within a short time from its date.

The questions arising under the first claim will be hereafter considered in connection with the charge to the jury.

The second claim will be considered first, in connection with the objections to the admissibility of the testimony offered by the plaintiffs to sustain it. The motion states the evidence as follows:—

. The plaintiffs offered evidence in chief to prove that some time prior to November, 1871, the Bartram & Fanton Sewing Machine Company was indebted to the plaintiffs in the sum of $7,000 and was being pressed for payment; that William P. Seeley, one of the defendants, and who was acting and managing for the company, of which he was a stockholder, in paying off its debts, proposed to the plaintiffs, that as the company would want to use what ready money it had, it would get up a note and get some one to sign it, whom the stockholders, or some of them, would indemnify, and would sign as guarantors on the back of the note, and that they thought they could get Charles Benedict to let them use his name; that thereafter Charles Hull, one of the defendants, and also a stockholder in the company, went to Benedict for the purpose of inducing him to lend his name as maker of the proposed note, and for that purpose promised him that he should never be called upon to pay the note and that no harm should ever come to him on account of his signing it, but that the guarantors would pay it; that afterwards Hull and Seeley gave the note to the plaintiffs in accordance with their proposition so to do, and they and the other guarantors, all of whom were stockholders in the company, told the plaintiffs that they had got Benedict's name, and had agreed to protect him and to pay the note and that no harm should come to him from signing it, and that the plaintiffs accepted the note in payment of their claim against the company; that afterwards Benedict also informed the plaintiffs that the defendants had promised to protect him, and that it was agreed when he signed the note that he was not to pay it and should have no trouble with it, but that the parties who signed on the back of it should take care of it.

That part of the evidence which details a conversation between the plaintiffs and Benedict, after the transaction,

and not in the presence of the defendants, wherein Benedict told the plaintiffs " that the defendants had promised to protect him, and that it was agreed when he signed the note that he was not to pay it, and should have no trouble with it, but that the parties who signed on the back of it should take care of it," was not only matter *inter alios,* but as against the defendants pure hearsay evidence which was too clearly inadmissible to justify discussion.

Most of the remaining evidence objected to goes to establish at the very inception of the note a verbal agreement in direct conflict with the written guaranty. But we must not fail to give due prominence and consideration to the express disclaimer on the part of the plaintiffs and the court that the evidence was offered or received for the purpose of contradicting the note or guaranty, but only to excuse the plaintiffs' failure to test the collectibility of the note by first bringing suit against the maker.

But notwithstanding the disclaimer it seems to us that the evidence was admitted· in violation of the spirit and reason of the rule, and it had the precise effect which would result from a material change in the contract.

But it may be suggested that if parol evidence of a subsequent promise does not vary the contract, neither will an antecedent or contemporaneous verbal agreement. We think however there is good ground for a distinction between antecedent and subsequent transactions in this regard, arising from the reason of the rule which excludes parol evidence and which merges all previous conversations and negotiations in the deliberate language of the written contract. To adopt the language of Judge NOTT, in *McDowall* v. *Beckley,* 2 Constitutional Reports (S. C.), 265, —" The various conceptions of different minds on the same subject, the liability of all persons to forgetfulness, the influence of passion, prejudice or interest, render unwritten contracts at all times uncertain. But *litera scripta manet.* It cannot change with times and circumstances, and when a contract· is reduced to writing, the law presumes the writing to contain the whole agreement." In *Stone* v.

*Rockefeller*, 29 Ohio St., 625, which was an action on a written guaranty of the collectibility of a note, the court say:—"The law will not supply any condition which is not incorporated into the agreement, or fairly implied from the language used; and in the absence of fraud, accident or mistake, it is presumed conclusively that the terms of the contract, as agreed between the parties at the time, are fully expressed in the written guaranty."

But the plaintiffs in effect say, we do not vary the contract between us and the defendants; there it is, intact on the back of the note; we base our action upon it. But how is it preserved intact? From the same transaction, from the same conversation, at the same time and place, between the same parties, and upon the same subject matter, the court allows to be proved two contracts, side by side, one written, the other verbal; one a conditional guaranty, the other an absolute promise to pay the note without any condition whatsoever. But which is to prevail? Why, the written, of course, say the plaintiffs. But how? Only in name, while the contemporaneous verbal contract under cover of the doctrine of waiver in effect nullifies it. Now it seems to us that this is a case for the application of the presumption that the whole of the agreement was committed to writing. This case strikingly illustrates the necessity and wisdom of the rule. There never was an instance of more direct and palpable contradiction. It is incredible that the parties talked one thing and wrote another so different at the same time and place and with the same motives. If any waiver was agreed to and any promise made, it was most natural to insert it in the writing. But afterwards, with a change of circumstances and motives, it is reasonable to expect that parties may waive some provision of a previously written contract; so that a contemporaneous and subsequent waiver do not rest on the same ground.

In *Goodwin* v. *Buckman*, 11 Iowa, 308, cited by the plaintiffs to support the admission of this evidence, there is a clause in the opinion which seems to concede that there is

ground for the distinction which we have been discussing. That, like the case at bar, was an action on a guaranty of the collectibility of a note. The waiver relied upon was, " that after the note matured the defendant told the plaintiff not to sue it and that he would pay it himself." WRIGHT, J., in giving the opinion, says:—"Treated as a conditional promise, the guarantor, as a general rule, is bound only in the event that the holder shall use diligence to collect it of the maker. But that the use of this diligence may be waived by the guarantor we have no doubt. And if, at his instance and request and upon faith of his promise, the diligence is not used, he is liable. ·*It may be admitted that a parol agreement, made at the time of the guaranty, to waive the use of diligence, would not be admissible because of its conflict with the written agreement.* * · *

In this case, however, the proof in no sense contradicted the written guaranty, any more than proof of the waiver of laches in the case of an ordinary indorsement of negotiable paper."

The case of *Cowles* v. *Townsend & Milliken*, 31 Ala., 133, is distinguishable from the case at bar in several respects, yet the reasoning of STONE, J., in giving the opinion, we think is applicable. It was an action by payees against the acceptor of a bill of exchange, in which the defendant offered to prove by parol that he accepted the bill under a verbal agreement with the payees to the effect that, if the bill was not paid at maturity, the payees should not call upon him until they had prosecuted the drawers to judgment or insolvency and used all proper means to collect the same. The judge says:—" The contract declared on in this case is an absolute primary obligation to pay money. The testimony which the court rejected was offered with a view of proving a contemporaneous oral agreement of the parties, that the liability of the appellant was not absolute and primary, but contingent and secondary. Thus viewed a more palpable attempt to vary by parol the terms of a written contract cannot be presented."

We have not been able to find any case where a parol

contemporaneous agreement was admitted for the purpose of showing waiver in an action upon a written guaranty like the one under consideration. It is claimed however by the plaintiffs that the law is well settled that an indorser of a note may by parol waive demand of payment and notice of dishonor of a bill, and that it may even be inferred from circumstances, and the authorities they cite undoubtedly sustain the claim. But such a waiver is a different thing from the waiver of the collectibility of a note prescribed by the parties in their contract; and a waiver of a condition in the contract at its inception is very different from that founded on subsequent transactions or promises. And, as to waiver of demand and notice in the case of an indorser, it ought to be remarked that in *Leffingwell* v. *White*, 1 Johns. Cas., 99, *Minturn* v. *Fisher*, 7 Cal., 573, and *Yeager* v. *Farwell*, 13 Wall., 6, it was held " that as the written indorsement is the highest and best evidence of the indorser's contract, it could not be varied or modified by a parol promise, and that consequently a contemporaneous verbal promise by the indorser, to pay the note in the event the maker did not, would not dispense with notice of dishonor." But we concede that this view is against the preponderance of legal authority.

Among the ablest opinions in opposition to the above proposition is that of Judge LOWRIE, in *Barclay* v. *Weaver*, 19 Penn. St., 396, where it was held that a contemporaneous verbal promise by an indorser to pay the note will dispense with notice of dishonor. But we think the reasoning in support of this decision suggests sufficient grounds for distinguishing the case from the one at bar, so that it does not essentially impair the strength of our position. The same judge had decided the other way in the court below, and when the question came to the Supreme Court for review, he said :—" My error consisted in the assumption that the law regards an indorsement as a written contract to pay on condition that the usual demand be made and notice given. It is not so. For where the indorser is himself the real debtor, as in the case of accommodation notes

and bills, or has taken an assignment of all the property of the maker as security for his indorsement, or where he can have no remedy against the maker, or in the case of the drawer of a bill of exchange where the drawee is, and during the currency of the bill continues to be, without funds of the drawer, demand and notice are not necessary. * * The most therefore that can be said of an indorsement of negotiable paper is, that from it there is *implied* a contract to pay on condition of the usual demand and notice; and that this implication is liable to be changed on the appearance of circumstances inconsistent with it, whether those circumstances be shown orally or in writing. But it may well be questioned whether the condition of demand and notice is truly part of the contract, or only a step in the legal remedy upon it." Then, after a very able argument to sustain 'this position, the opinion concludes as follows:—" It seems therefore that the duty of demand and notice in order to hold an indorser, is not a part of the contract, but a step in the legal remedy, that may be waived at any time, in accordance with the maxim, *quilibet potest renunciare juri pro se introducto.* And certainly an indorsement is not regarded as a written contract so far as to prevent oral proof that its terms differ from the ordinary contract of indorsement."

If the above reasoning is correct, then it is clear that all the authorities cited by the plaintiffs relative to the waiver of demand and notice as to indorsers of notes have no force or pertinency in the case at bar, for the authorities (without an exception we believe) hold that in a written guaranty like the one now under consideration, the collectibility of the note by legal proceedings is not only an essential part of the contract, but a condition precedent to the right of recovery; the only difference being on the question whether it is possible, without making a new and independent contract, to waive the test of collectibility by actual suit, or whether the fact of insolvency will excuse the bringing of the suit. We conclude therefore that the evidence referred to was not admissible to show a waiver of an essential part of the written contract.

But it was claimed in the argument that, if not admissible to show waiver, it would be to estop the defendants from insisting on the condition. We think however that the same reasoning applies to the latter as to the former, and with equal strength. And in lieu of a more particular discussion of the doctrine of estoppel as applicable to such a case, we cite, as furnishing strong confirmation of our position, the case of *Insurance Co.* v. *Mowry*, 96 U. S. Reps., 544, where it was held (Mr. Justice FIELD giving the opinion,) that "promissory representations as to future action dependent upon a contract to be entered into, do not create an estoppel. A promise of agents of an insurance company, that if a party will take out a policy he shall be notified when to pay the annual premiums before he shall be required to pay them, will not, although such notice is not given, estop the company from setting up the forfeiture which, according to the terms of the policy subsequently accepted, was incurred on the non-payment of the premium when due. The policy as issued and accepted must, in a court of law, be taken as expressing the final agreement of the parties, and as merging all previous verbal stipulations. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their agreements when reduced to writing. The doctrine carried to the extent for which the assured contends would subvert the salutary rule, that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent." Citing *White* v. *Ashton*, 51 N. York, 280, which is in point, and other authorities.

The other reason given by the plaintiffs for not attempting to collect the note out of Benedict was, that the attempt would be vain by reason of insolvency, and this fact they offered evidence to prove. On the contrary, as the motion states, " the defendants offered evidence to prove that Benedict, at the time he signed the note, was of abundant pecuniary ability to pay the same ; that from that time continuously until April 28th, 1873, more than $30,000

worth of property in Danbury stood in Benedict's name and belonged to him; that on that day he transferred all of his property to his wife, who still holds possession of more than $25,000 worth of it; that the only consideration for this transfer was the purchase by Mrs. Benedict, in 1863, of certain debts amounting to $23,000 in favor of certain creditors against her husband for fifteen per cent. of the face value of the same, and a debt of $4,500 due from Benedict to Mrs. Benedict's father and which had been set out to Mrs. Benedict upon the distribution of her father's estate; that Mr. and Mrs. Benedict were married in 1828, and that the money with which she purchased the debts was the proceeds of property given to her by her husband at a time when he was not indebted; that the transfer was made because one Burr had three days previously brought a suit against Benedict for the claimed illegal use of a patent right, and that Mr. Taylor, one of the plaintiffs, drew, witnessed and took the acknowledgment of the deed. It was conceded that the plaintiffs had been the holders of the note continuously since its inception, and that Mr. Taylor had advised Benedict not to pay it as it would be unfair and unjust."

Upon the evidence in the case the defendants claimed, and asked the court to charge the jury, that if they found the facts concerning the transfer from Benedict to his wife as claimed by the defendants, such transfer was void as to the plaintiffs; that the plaintiffs could still have collected the note in suit out of the property, and that it was their duty to have done so; that if the jury found the facts as claimed by the defendants, then Benedict was still solvent when the present suit was brought, so far as the plaintiffs were concerned; and that, if this was not so, the plaintiffs had by their own fraudulent co-operation with Benedict in the transfer, rendered him insolvent, and therefore could not recover of the defendants. The court refused so to charge, but charged as follows:—"It is a question of fact for you to decide, whether or not Benedict was insolvent when this suit was brought. The defendants claim that he

was not insolvent, because the transfer of April 28th, 1873, was fraudulent and void. If you find the transfer was made to defraud Burr, it would be void as to that claim, but our statute prevents it from being void as to any one except him whose debt was sought to be avoided. It is claimed that the transfer is void for inadequacy of price, as to creditors. I don't understand that any creditors are here asking to be heard. I think that the transfer should be treated, so far as this suit goes, as a valid transfer."

The court also, in charging the jury in reference to the fourth, sixth and tenth written requests of the defendants, in different forms of expression re-iterated and emphasized the idea that under our statute no transfer of property would be invalid against any existing creditor unless it was made with the specific intent to defraud such creditor. And the jury must have understood that though they should find that Benedict conveyed his property to his wife with the fraudulent intent to avoid the Burr claim, yet the plaintiffs, though then his creditors, could not attach and hold the property in a suit upon the note in question.

Is this correct? The statute (Revision of 1875, p. 345, sec. 1,) is as follows:—" All fraudulent conveyances, suits, judgments, executions, or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

It was held in *Benton* v. *Jones*, 8 Conn., 186, that this statute was substantially copied from that of the 13 Eliz., c. 5, and must receive a similar construction. And in regard to the latter, and to similar statutes in other states, it is well settled that "it is not necessary to establish a specific design to delay, hinder or defraud the particular creditor who assails the transfer, for the intent to delay, hinder or defraud one particular creditor, renders the transfer void as to all." Bump on Fraudulent Conveyances, 28;

*Miner* v. *Warner*, 2 Grant, 448; *Hoke* v. *Henderson*, 3 Dev., (N. C.,) 12; *Gruder* v. *Boyles*, 1 Brevard, (S. C.,) 266; *Warner* v. *Percy*, 22 Verm., 155; *Tubervill* v. *Tipper*, Palmer, 415, (note); *Rex* v. *Nottingham*, Lane, 42.

But our attention has been called to the difference of phraseology between our statute and that of 13 Eliz. While conceding that the difference gives some color for a different construction and that a strict and literal rendering of our statute might justify the charge of the court below, yet the following considerations will show that the construction given was not the proper one.

1. As the statute was enacted "for the suppression of fraud, the advancement of justice and the promotion of the public good," it should be liberally and beneficially construed "to suppress the fraud, abridge the mischief and enlarge the remedy." *Twyne's Case*, 3 Coke, 80; Bump on Fraudulent Conveyances, 12.

2. The only difficulty in our statute is that it seems to restrict the remedy to that creditor only whose debt was intended to be avoided. But it should be borne in mind that every person is conclusively presumed to intend the natural and necessary consequences of his acts. If therefore *A* is indebted to *B*, and also to *C*, and makes a fraudulent conveyance with the specific intent to avoid the debt to *B*, the necessary effect is (and he knows it,) to avoid also the debt to *C;* and so by simply applying the proper rule of evidence, both debts may be brought not only within the meaning but within the very words of the act.

3. The statute is declaratory of the common law, which is still in force and which "supplements the statute to the end that justice may be done." Bump on Fraudulent Conveyances, 11; *Fox* v. *Hills*, 1 Conn., 295; *Benton* v. *Jones*, 8 Conn., 186; *Hall* v. *Sands*, 52 Maine, 358; 2 Swift's Digest, (Rev. ed.,) 260.

As to the thirteenth written request, relative to the effect of a subsequent promise by the guarantors after laches on the part of the guarantee, it was obviously founded on the New York rule and other decisions to which we have re-

Allen *v.* Rundle.

ferred, but which we have not adopted to the extent that is assumed in the proposition referred to. We deem it unnecessary to discuss the matter further; only we would suggest, by way of criticism, that the proposition was an abstract one, and was not in form based upon specific facts claimed to have been proved, but, assuming that facts might exist whereby the remedy was lost, the court was asked to rule as matter of law that a subsequent promise could have no effect. No facts were conceded upon which the court could say that the plaintiffs' remedy was lost; and it would have been unjust to the plaintiffs so to have assumed in giving instructions to the jury, without making the necessary qualifications.

As there are other grounds for a new trial, it will not be necessary to consider particularly the neglect of the court to comply with the statute (Revision of 1875, p. 442, sec. 2,) which requires a written charge upon written requests. To avoid, however, giving encouragement to such omissions, we will merely say that it would undoubtedly be ground for granting a new trial unless waived by the party making the requests, or unless it appeared that it occasioned no injury.

We have had no occasion for considering the peculiar character of the guaranty, as one of the collectibility of the note "till paid," since the present suit was brought before any proceedings had been instituted for the collection of the note out of the maker.

A new trial is advised.

In this opinion the other judges concurred.